UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

|  |  |
|---|---|
| ICON EV LLC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES, *et al.*, <br><br> *Defendants*. | PUBLIC VERSION <br><br><br> Court No. 26-02759 |

## DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

OF COUNSEL

TAMARI J. LAGVILAVA
Senior Attorney
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229
(202) 344-2940
tamari.j.lagvilava@cbp.dhs.gov

April 17, 2026

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9303

ADAM A. VISCHIO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 305-5528

*Attorneys for Defendants*

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................... 3

STATEMENT OF FACTS ....................................................................................... 5

    I.    Defendant's Rule 12(b)(1) Motion to Dismiss ................................................ 8

        A.    Legal Standards.......................................................................................... 8

        B.    The Court's Section 1581(i) Jurisdiction is Strictly Limited........................ 8

MOTION TO DISMISS ARGUMENT..................................................................... 9

    II.    The Court Should Dismiss this Case for Lack of Subject Matter Jurisdiction Because Jurisdiction Under Section 1581(c) Will be Available and is Not Manifestly Inadequate ......... 9

        A.    EAPA Expressly Provides For Judicial Review Pursuant to 1581(c)............................ 9

        B.    Section 1581(c) is Not a Manifestly Inadequate Remedy ........................... 11

    III.    Plaintiff's Case is Unripe Because it Challenges Nonfinal Agency Action ................. 13

OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINIG ORDER ARGUMENT ............................................................. 15

    IV.    Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order Must be Denied.......................................................................................................... 15

        A.    Standard for Granting a Preliminary Injunction .......................................... 15

        B.    Plaintiff Has Failed to Establish a Likelihood of Success on The Merits .................... 16

            i.    The Court Lacks Subject Matter Jurisdiction ........................................... 16

            ii.    ICON EV Has No Constitutional Right to Engage in International Trade Free of Interim Measures When CBP Has Determined a Reasonable Suspicion of Evasion ........ 17

        C.    Plaintiff Has Failed to Establish Irreparable Harm Because Economic Injury Does not Outweigh Compliance with the Law ................................................................... 19

        D.    The Balance of Hardships and Public Interest Factors Weigh in Favor of Denial Because an Injunction Would Cast Doubt on the Constitutional Validity of EAPA and Injure Lawful U.S. Industry ............................................................................... 22

CONCLUSION........................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**

*A Classic Time v. United States*,
123 F.3d 1475 (Fed. Cir. 1997) .................................................................................. 18

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ..................................................................................................... 14

*Am. Ass'n of Exps. & Imps.-Textile & Apparel Grp. v. United States*,
751 F.2d 1239 (Fed. Cir. 1985) ............................................................................. 17, 18

*Am. Inst. for Imported Steel Inc. v. United States*,
600 F. Supp. 204 (Ct. Int'l Trade 1984) ..................................................................... 20

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ....................................................................................................... 17

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ................................................................................... 15

*American Air Parcel Forwarding Co. v. United States*,
718 F.2d 1546 (Fed. Cir. 1983) ............................................................................. 12, 13

*Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd*,
2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) ..................................................... 11

*Arjay Assocs., Inc. v. Bush*,
891 F.2d 894 (Fed. Cir. 1989) ..................................................................................... 18

*Arnett v. Kennedy*,
416 U.S. 134 (1974) ..................................................................................................... 17

*ARP Materials, Inc. v. United States*,
47 F.4th 1370 (2022) ..................................................................................................... 9

*Ashley Furniture Indus. LLC v. United States*,
569 F. Supp. 3d 1261 (Ct. Int'l Trade 2022) .............................................................. 20

*Aspects Furniture Int'l, Inc. v. United States s*,
607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) .............................................................. 11

*Bd. of Trustees of the Univ. of Ill. v. United States*,
289 U.S. 48 (1933) ....................................................................................................... 18

*Board of Regents v. Roth*,
408 U.S. 564 (1972)................................................................................................17

*Buttfield v. Stranahan*,
192 U.S. 470 (1904)................................................................................................18

*Chemsol, LLC v. United States,*
755 F.3d 1345 (Fed. Cir. 2014)..............................................................................10

*Corus Staal BV v. United States*,
502 F.3d 1370 (Fed. Cir. 2007)..........................................................................8, 21

*CP Kelco (Shandong) Biological Co. v. United States*,
145 F. Supp. 3d 1366 (Ct. Int'l Trade 2016) .........................................................12

*Diamond Tools Technology*,
545 F.Supp. 3d 1324 (Ct. Int'l Trade 2021) .............................................11, 14, 23

*Elkem Metals Co. v. United States,*
135 F. Supp. 2d 1324 (Ct. Int'l Trade 2001) .........................................................20

*Erwin Hymer Group N.A, Inc. v. United States* ,
930 F.3d 1370 (Fed. Cir. 2019)..............................................................................13

*Fisher v. United States*,
402 F.3d 1167 (Fed. Cir. 2005)..............................................................................13

*Hannah v. Larche*,
363 U.S. 420 (1960)................................................................................................18

*Hartford Fire Ins. Co. v. United States*,
544 F.3d 1289 (Fed. Cir. 2008)..............................................................................11

*Hysla v. United States*,
22 C.I.T. 44 (1998) ...........................................................................................11, 12

*Int'l Custom Prods., Inc. v. United States*,
791 F.3d 1329 (Fed. Cir. 2015)...........................................................................12,17

*Int'l Custom Prods., Inc v. United States*,
467 F.3d 1324 (Fed. Cir. 2006)................................................................11, 12, 23

*Kwo Lee, Inc. v. United States*,
24 F. Supp. 3d 1322 (Ct. Int'l Trade 2014) ...........................................................19

iii

*Martin v. United States*,
894 F.3d 1356 (Fed. Cir. 2018)..................................................................................... 13

*Mathews v. Eldridge*,
424 U.S. 319 (1976)............................................................................................... 17, 18

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)...................................................................................................... 15

*McKart v. U.S.*,
395 U.S. 185 (1969)......................................................................................................... 8

*Miller & Co v. United States*,
824 F.2d 964 (Fed. Cir. 1987)...................................................................................... 12

*Morrissey v. Brewer*,
408 U.S. 471 (1972)...................................................................................................... 17

*Munaf v. Geren*,
553 U.S. 674 (2008)...................................................................................................... 15

*Nat'l Corn Growers Ass'n v. Baker*,
840 F.2d 1547 (Fed. Cir. 1988)............................................................................... 12, 13

*Nat'l Nail Corp.v. United States*,
335 F. Supp. 3d 1321 (Ct. Int'l Trade 2018) .............................................................. 11

*Ninestar Corp., v. United States*,
687 F.Supp.3d 1308 (Ct. Int'l Trade 2024) ................................................................... 8

*Nitrogen Prods. v. United States*,
288 U.S. 294 (1933)...................................................................................................... 17

*Otter Products LLC v. United States*,
37 F. Supp. 3d 1306 (Ct. Int'l Trade 2014) ................................................................. 19

*Phoenix Metal Co. v. United States*,
2024 WL 2891503 (Ct. Int'l Trade 2024)............................................... 10, 11, 18, 22

*Reno v. Catholic Soc. Servs., Inc.*,
509 U.S. 43 (1993)........................................................................................................ 13

*S.J. Stile Assoc.v. Snyder*,
646 F.2d 522 (C.C.P.A. 1981) ..................................................................................... 19

*Shandong Huarong General Group v. U.S*,
122 F. Supp. 2d 143 (Ct Int'l Trade 2000) ..................................................... 19, 20, 21

*Shinnecock Indian Nation v. United States*,
782 F.3d 1345 (Fed. Cir. 2015).................................................................................. 14

*Shree Rama Enter. v. United States*,
983 F. Supp. 192 (Ct. Int'l Trade 1997) ................................................................... 20

*Silfab Solar, Inc. v. United States*,
892 F.3d 1340 (Fed. Cir. 2018)................................................................................. 16

*Sumecht NA, Inc. v. United States*,
923 F.3d 1340 (Fed. Cir. 2019)................................................................................. 15

*Sumecht NA, Inc. v. United States*,
331 F.Supp. 3d 1408 (Ct. Int'l Trade 2018) ............................................................. 19

*Sunpreme Inc. v. United States*,
892 F.3d 1186 (Fed. Cir. 2018)............................................................................ 10, 12

*Superior Commercial Solutions LLC v. United States,*
811 F. Supp 3d 1363 (Ct. Int'l Trade 2025) ...................................................... 10, 11, 12

*Tenaris Bay City, Inc.* v. U.S.,
745 F. Supp. 3d 1336 (Ct. Int'l. Trade 2024) ............................................................ 8

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
529 F.3d 1352 (Fed. Cir. 2008)................................................................................. 14

*TR Int'l Trading Co. v. United States*,
433 F.Supp.3d 1329 (Ct. Int'l Trade 2020), *aff'd*, 4 F.4th 1363 (Fed. Cir. 2021).......................... 8

*U.S. Ass'n of Importers of Textiles & Apparel v. United States*,
413 F.3d 1344 (Fed. Cir. 2005).......................................................................... 14, 15, 16

*Vietnam Finewood Co. Ltd v. U.S.*,
466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) ............................................................ 10

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982).................................................................................................... 24

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)........................................................................................................ 15

v

*Zenith Radio Corp. v. United States*,
710 F.2d 806 (Fed. Cir. 1983)..................................................................................... 19, 20

**Statutes**

19 U.S.C. § 1484(a)(2)(C) ...................................................................................................23

19 U.S.C. § 1517..........................................................................................................*passim*

19 U.S.C. § 1517(a)(5)..........................................................................................................4

19 U.S.C. § 1517(b)(1) ......................................................................................................3, 11

19 U.S.C. § 1517(c) ....................................................................................................2, 14,18

19 U.S.C. § 1517(c)(1)(A) ....................................................................................................4

19 U.S.C. § 1517(c)(2)..........................................................................................................4

19 U.S.C. § 1517(e) ...................................................................................................2, 3, 24

19 U.S.C. § 1517(f)..........................................................................................................4, 19

19 U.S.C. § 1517(g) .............................................................................................................14

19 U.S.C. § 1517(g)(1) ................................................................................................4, 9, 10

19 U.S.C. §§ 1517(g)(2)(A)................................................................................................10

19 U.S.C. §§ 1517(g)(2)(B) ...............................................................................................10

28 U.S.C. § 1581....................................................................................................... *passim*

28 U.S.C. § 1581(a) ............................................................................................................12

28 U.S.C. § 1581(c) ....................................................................................................*passim*

28 U.S.C. § 1581(i) .....................................................................................................*passim*

28 U.S.C. § 1581(i)(1)(D)....................................................................................................9

28 U.S.C. § 2637(d) ..............................................................................................................8

The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA),
Pub. L. No. 114-125, 130 Stat. 122 (2016)...........................................................................3

**Rules**

Rule 12 (b)(1)................................................................................................................ 1, 8

Rule 65 ........................................................................................................................... 1

**Regulations**

19 C.F.R. § 165.21 .........................................................................................................4

19 C.F.R. § 165.22 .........................................................................................................4

19 C.F.R. § 165.23 ..................................................................................................... 4, 18

19 C.F.R. § 165.26 ....................................................................................................... 18

19 C.F.R. §§ 165.41 ..................................................................................................... 18

19 C.F.R. §§ 165.42 ..................................................................................................... 18

*Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China:
Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final
Determination of Countervailing Duty Investigation and Countervailing Duty Order,*
90 Fed. Reg. 38,759 (Dep't of Commerce Aug. 12, 2025)..............................................5

*Low Speed Personal Transportation Vehicles from China,*
90 Fed. Reg. 38,176 (Int'l Trade Comm'n Aug. 7, 2025)........................................... 22

**Other Authorities**

H.R. Rep. No. 114-114 (2015)...................................................................................3, 23
S. Rep. No. 14-45 (2015) ...........................................................................................3, 23

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JANE A. RESTANI, JUDGE

| | |
|---|---|
| ICON EV LLC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES, *et al.*, <br><br> *Defendants*. | Court No. 26-02759 |

**DEFENDANT'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Rules 12(b)(1) and 65 of the United States Court of International Trade, defendants, the United States, *et al.*, respectfully request that the Court dismiss plaintiff's claims for lack of subject matter jurisdiction.  Alternatively, defendants respectfully request that the Court deny plaintiff's motion for a temporary restraining order and preliminary injunction.

This case relates to an ongoing investigation of evasion of antidumping duty (AD) and countervailing duty (CVD) orders covering certain low-speed personal transportation vehicles from the People's Republic of China (the Orders) pursuant to the Enforce and Protect Act (EAPA), 19 U.S.C. § 1517.  Purporting to challenge *interim* measures imposed by U.S. Customs and Border Protection (CBP), plaintiff attempts to dodge the ongoing administrative process and the prescribed path for judicial review of *final* determinations in EAPA cases under 28 U.S.C. § 1581(c), while undermining EAPA's statutory scheme for strengthening enforcement of the trade laws.  Plaintiff cannot achieve this extraordinary result with unsupported and self-serving statements of economic harm.

1

The Court does not possess residual jurisdiction under 28 U.S.C § 1581(i), because, after exhausting its administrative remedies under EAPA, plaintiff could challenge the final determination of CBP under section 1581(c), and that remedy expressly prescribed by Congress is not manifestly inadequate.  The Court does not possess jurisdiction for an additional reason – plaintiff's challenge is unripe.  The challenged interim measures, as the name suggests, are not a final agency action under the statutory scheme. Rather, the EAPA investigation culminates in initial and final administrative determinations by CBP that are yet to come.  Congress requires CBP to impose interim measures under the conditions set forth in 19 U.S.C. § 1517(e), but only provides for judicial review of final determinations under 19 U.S.C. § 1517(c) and (f). Thus the statutory framework expressly indicates that interim measures at the beginning of an EAPA investigation are not a final agency action that would be fit for judicial review.

Furthermore, plaintiff's motion should be denied because it has not established the requirements for the extraordinary remedy of injunctive relief.  Plaintiff is unlikely to succeed on the merits because, as a threshold matter, the court lacks residual jurisdiction and the case is unripe. Furthermore, Plaintiff has no entitlement to import merchandise without the application of interim measures required by statute when, as here, CBP properly has determined that a reasonable suspicion of evasion of AD and CVD orders exists.  Plaintiff also has failed to establish irreparable harm because its assertions of economic injury are unsupported and undermined by its own financial statements.  Lastly, the balance of hardships and public interest factors weigh strongly against an injunction.  As the plain language and legislative history indicates, EAPA was passed to ensure that AD and CVD orders are fully and effectively enforced and to protect the domestic industry from unfair competition with importers who otherwise would evade payment of AD and CVD duties.  Whenever CBP possesses a reasonable suspicion that merchandise was entered

2

through evasion, Congress requires CBP to impose the interim measures. Under these circumstances and under this statutory scheme, the requested injunctive relief would weaken EAPA, thus harming the domestic industry and undermining the public interest declared by Congress, which strongly outweighs plaintiff's unfounded assertions of irreparable harm.

## **BACKGROUND**

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016). Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP administrative procedure for investigating allegations of evasion of AD/CVD orders as part of the agency's efforts to ensure a level playing field for domestic industries. *See generally* H.R. Rep. No. 114-114 (2015); S. Rep. No. 114-45 (2015).

Under EAPA, federal agencies or interested parties — including domestic and foreign manufacturers, producers, exporters, certified unions or recognized unions or groups of workers; and trade or business associations in a particular industry — may submit allegations to CBP that merchandise covered by an AD/CVD order has entered the United States through evasion. If such allegations reasonably suggest that evasion is occurring, within 15 calendar days of receiving an allegation, CBP must initiate an investigation. 19 U.S.C. § 1517(b)(1). Within 90 calendar days, CBP must make an initial determination of whether there is reasonable suspicion of evasion and, if so, CBP must issue interim measures, which includes the suspension and extension of liquidation for certain entries and the posting of cash deposits, and such additional measures that the Commissioner determines necessary to protect the revenue. 19 U.S.C. § 1517(e). The EAPA statute grants CBP authority to collect and verify any information it deems necessary to make its evasion determination. 19 U.S.C. § 1517(c)(2). CBP's regulations set forth the types, and

3

requirements for the submission of factual information by parties. 19 C.F.R. § 165.23. For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from the date on which the investigation was initiated to submit factual information on the record, and 230 calendar days to submit written arguments. *Id.* Parties to the investigation have 15 calendar days to submit responses to other parties' written arguments. *Id.* Interested parties who are not parties to the investigation may provide information only in response to requests by CBP. *Id.*

During the investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation, as well as record information submitted by interested parties. 19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21. No later than 300 calendar days after the investigation's initiation, CBP is required to make a determination as to whether the administrative record contains substantial evidence to conclude that AD/CVD duties have been evaded. 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22. Evasion occurs when covered merchandise is entered by a material and false document, statement, or act, or material omission, which results in a cash deposit, security, or applicable AD or CVD amount being reduced or not applied. 19 U.S.C. § 1517(a)(5). Interested parties are permitted to request an administrative review of the initial determination, and CBP must complete the review and issue a final administrative review determination no later than 60 business days after such a request. 19 U.S.C. § 1517(f). EAPA allows for judicial review in this Court of CBP's final determination and the original determination as to evasion, provided that an action is commenced within "30 business days" after CBP completes the administrative review that culminates in the final determination. 19 U.S.C. § 1517(g)(1). The jurisdictional provision for this Court's review of final EAPA determination is 28 U.S.C § 1581(c). *Id.*

**STATEMENT OF FACTS**

In August 2025, the U.S. Department of Commerce ("Commerce") issued antidumping and countervailing duty orders covering low-speed personal transportation vehicles (LSPTVs) from the People's Republic of China. *Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order*, 90 Fed. Reg. 38,759 (Dep't of Commerce Aug. 12, 2025) (the Orders). The merchandise covered by the Orders are LSPTVs from China, "whether finished or unfinished and whether assembled or unassembled." *Id.* at 38763. The relevant scope of the order is:

> LSPTVs meeting this description are generally open-air vehicles, i.e., may have a permanent roof, may have a permanent windshield, and may be covered with temporary sides, with a minimum of four wheels, a steering wheel, a traditional side-by-side or in-line row seating arrangement (i.e., non-straddle), foot operated accelerator and brake pedals, and a gross vehicle weight of no greater than 5,500 pounds. Vehicles with a roof and four sides with doors and windows permanently integrated into the chassis at the time of production (e.g., the sides are welded to the chassis and roof) are not subject to the order. The main power source for subject LSPTVs is either an electric motor and battery (including but not limited to lithium-ion batteries, lithium phosphate batteries, lead acid batteries, and absorbed glass mat batteries) or a gas-powered internal combustion engine. Subject LSPTVs may be described as golf carts, golf cars, low speed vehicles, personal transportation vehicles, or light utility vehicles….
>
> An unfinished and/or unassembled LSPTV subject to these orders covers at a minimum a subassembly, also known as a ''rolling chassis,'' which is typically comprised of, but not limited to, a frame or body with front and/or rear suspension components (such as arms, springs, axles, spindles, and shafts) installed and powertrain components (including either an electric motor or a gas-powered internal combustion engine) installed or ready for installation. When imported together with a rolling chassis subject to these orders, other LSPTV components, such as batteries, bumpers, wheel and tire assemblies, cowlings, fenders, grills, kick plates, steering column and steering wheel assemblies, dash assembly, seat assemblies, pedal assemblies, brake assemblies, canopy or roof assemblies, temporary rain enclosures, windshields, mirrors, headlights, taillights, lighting systems, or storage—whether assembled or unassembled, whether as part of a kit or not, and whether or not accompanied by additional components—constitute part of an unfinished and/or unassembled LSPTV that is subject to these orders. The

5

inclusion of other products, components, or assemblies not described here does not remove the product from the scope.

LSPTVs and subassemblies subject to these orders include those that are produced in the subject country whether assembled with other components in the subject country or in a third country. Processing or completion of finished and unfinished LSPTVs and subassemblies either in the subject country or in a third country does not remove the product from the scope. *Id.* at 38763.

On October 10, 2025, the American Personal Transportation Vehicle Manufacturers Coalition ("the Alleger") submitted EAPA allegations that ICON EV and other manufacturers are evading the Orders. Pl. Mot. Exh. 3[1], CBP Notice of Initiation of Investigation and Interim Measures, EAPA Cons. Case 8247 (April 6, 2026) ("4/6/26 Notice").  On December 8, 2025, the Alleger submitted a supplemental allegation against ICON EV.  *Id.* at 3.  In this supplemental allegation, the Alleger asserted that ICON EV and other importers evaded the Orders "by disassembling finished Chinese-origin LSPTVs into parts for assembly into LSPTVs in the United States to avoid classification as LSPTVs/subassemblies covered by the Orders, misclassifying the merchandise, and transshipping Chinese-origin LSPTVs and parts through Vietnam."  *Id.* at 3. Furthermore, the Alleger asserted that ICON EV "ha[d] historically imported a substantial quantity of goods under [HTSUS 8703.10]." *Id.* at 4.  The Alleger and others in the industry described this provision as "electric golf carts and spare parts, primarily sourced from several Chinese suppliers." *Id.* The Alleger also submitted an investigation report that describes ICON EV's facilities as designed for "warehousing and assembly activities rather than manufacturing and that job postings at these facilities advertised positions for entry-level workers to assemble golf carts from imported components." *Id.*

---

[1] The Government has submitted for this Court's consideration a confidential, unredacted version of CBP's Notice of Initiation of Investigation and Interim Measures, EAPA Cons. Case 8247 (April 6, 2026) as Exh. 1

On April 6, 2026, CBP notified ICON EV that it had commenced a formal investigation pursuant to EAPA and was imposing interim measures. *Id*. CBP informed ICON EV and other importers that its investigations covered entries from "September 7, 2024, through the pendency of this investigation." *Id*. at 2. CBP explained the EAPA statutory scheme, noting that it will initiate an investigation if it determines that information provided "reasonably suggests that the covered merchandise … entered [the U.S.] through evasion." *Id*. The notice also explained that it will impose interim measures pursuant to the statute when there is reasonable suspicion that the importer "entered Chinese-origin covered merchandise into the United States through evasion." *Id.* at 10.

The formal notice fully details the information provided by the Alleger and CBP's rationale for the imposition of interim measures. *Id.* at 11-14. CBP explained that deficiencies with supported documents provided by plaintiff's counsel, "combined with admissions of continued Chinese sourcing and incomplete supply chain records, establish reasonable suspicion that ICON is engaging in transshipment of golf carts through Vietnam to evade the *Orders." Id.* at 13. CBP detailed three primary reasons for supporting its finding of a reasonable suspicion of evasion: (1) using "Marxon as an [Importer of Record] while ICON remains the consignee which both source from the same Vietnamese supplier; (2) shipping "separate chassis and other golf cart components to avoid classification under HTSUS 8703.10."; and (3) assembling the separate shipments at its facilities and describing "easy-to-assemble components" in advertisements for jobs at its facilities. *Id.* at 14. CBP also noted that [[ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ ]]

7

### I.    Defendant's Rule 12(b)(1) Motion to Dismiss

### A.    Legal Standards

The Court of International Trade, "like all federal courts, is a court[] of limited jurisdiction." *TR Int'l Trading Co. v. United States*, 433 F.Supp.3d 1329, 1337 (Ct. Int'l Trade 2020) *aff'd*, 4 F.4th 1363 (Fed. Cir. 2021).  The Court's jurisdiction is governed by 28 U.S.C § 1581.  A party is not entitled to judicial relief "until the prescribed administrative remedy has been exhausted." *McKart v. U.S.*, 395 U.S. 185, 193 (1969).  In addition to the exhaustion requirements generally applicable to review of federal agency action, the CIT has its own "unique exhaustion statute," *Ninestar Corp., v. United States*, 687 F.Supp.3d 1308, 1324 (Ct. Int'l Trade 2024); *see* 28 U.S.C. § 2637(d).  This exhaustion statute "is not a mere hollow codification of prudential exhaustion," but rather "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Ninestar Corp.*, 687 F. Supp. 3d at 1324 (quoting *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  The requirement of exhaustion of administrative remedies "acknowledges agency expertise, allows agencies to correct mistakes, and promotes efficiency." *Tenaris Bay City, Inc.* v. U.S., 745 F. Supp. 3d 1336, 1343 (Ct. Int'l. Trade 2024).

### B.    The Court's Section 1581(i) Jurisdiction is Strictly Limited

Section 1581(c) provides the pathway for judicial review of CBP's final determinations in EAPA investigations.  It states that this Court "shall have exclusive jurisdiction of any civil action commenced under" 19 U.S.C. § 1517.  28 U.S.C. § 1581(c).  19 U.S.C. § 1517(g) provides for "judicial review" of "a determination under subsection (c) with respect to whether covered

merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(g)(1).

Section 1581(i) also provides a source of residual jurisdiction for this Court to entertain "any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . administration and enforcement" of the trade laws. 28 U.S.C. § 1581(i)(1)(D). Although described as a "catchall provision, its scope is strictly limited." *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (2022). Section 1581(i) may not be invoked when "jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate." *Id.* The purpose of the strict limitation on section 1581(i) jurisdiction is to "preserve[] the congressionally mandated procedures and safeguards provided in the other subsections, absent which litigants could ignore the precepts of subsections (a)–(h) and immediately file suit in the Court of International Trade under subsection (i)." *Id.*

## MOTION TO DISMISS ARGUMENT

II.    **The Court Should Dismiss This Case for Lack of Subject Matter Jurisdiction Because Jurisdiction Under Section 1581(c) Will e Available and is Not Manifestly Inadequate**

A.    **EAPA Expressly Provides For Judicial Review Pursuant to 1581(c)**

EAPA specifically provides that this Court has subject-matter jurisdiction pursuant to section 1581(c) over "any civil action commenced under . . . section 517 of the Tariff Act of 1930 [codified at 19 U.S.C. § 1517]." Section 1517, in turn, provides for judicial review of a determination of "whether covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(g)(1). A section 1581(c) challenge may include whether CBP "fully complied with all procedures under subsections (c) and (f)" and whether

9

CBP's "determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. §§ 1517(g)(2)(A) and (B).

Here, plaintiff challenges the imposition of interim measures in an EAPA investigation. Compl at ¶ 13. The Federal Circuit and this Court have previously rejected similar actions finding that when "relief is prospectively and realistically available under another subsection of 1581," plaintiff cannot invoke jurisdiction under subsection 1581(i). *Chemsol, LLC v. United States,* 755 F.3d 1345, 1354 (Fed. Cir. 2014); *accord Vietnam Finewood Co. Ltd v. United States*, 466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020).

Plaintiff is not the first party to prematurely challenge the imposition of interim measures. For example, in *Vietnam Finewood*, the importer, challenged CBP's interim measures before CBP had issued a final determination. *Vietnam Finewood Co,* 466 F. Supp. 3d at 1282. Like here, Vietnam Finewood claimed jurisdiction under §1581(i). *Id.* at 1277. The Court dismissed Vietnam Finewood's actions as premature, noting that a party "may not expand a court's jurisdiction by creative pleading." *Id.* at 1282 quoting *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018). The court held that that the importer "will be able to avail themselves of jurisdiction pursuant to 28 U.S.C. § 1581(c) in order to challenge Customs' final determination and administrative appeal, as well as any procedural decisions merged into the same, and the remedy provided under that subsection is not manifestly inadequate." *Id.* at 1284.

Plaintiffs cite *Superior Commercial Solutions* as justification for challenging interim measures. Pl. Mot. at 11, *Superior Commercial Solutions LLC v. United States,* 811 F. Supp 3d 1363 (Ct. Int'l Trade 2025), *appeal pending*, No. XXXX-XXXX (Fed. Cir.). This case is nonfinal and currently on appeal. At first glance, it's understandable why plaintiffs highlight this case, because up until *Superior Commercial Solutions*, this Court has summarily rejected importers'

10

challenges to the imposition of interim measures.[2]  However, the jurisdictional underpinnings of *Superior Commercial Solutions* are very dissimilar to this case.  Most notably, in *Superior Commercial Solutions*, Superior Commercial *waited* until the conclusion of the EAPA investigation *and then* challenged CBP's *final* determination and the application of interim measures *under section 1581(c)*.  *Superior Commercial Solutions LLC,* 811 F. Supp 3d at 1370, 1376.[3]  That was an appropriate invocation of the Court's jurisdiction under section 1581(c).  Conversely, here, ICON EV *did not* wait to challenge a final determination under section 1581(c), and instead, is attempting to invoke the Court's jurisdiction prematurely *under section 1581(i)*.  This attempt should be rejected.

To conclude, Plaintiffs must wait for Customs to complete its EAPA investigation and issue a final determination.  Then plaintiffs can challenge that final determination, and any interim agency decisions that will be subsumed in the final determination, in an action under section 1581(c).  ICON EV's artful pleading does not change that the true nature of this action is premature.

## B. Section 1581(c) is Not a Manifestly Inadequate Remedy

Defendants acknowledge that the Court has previously indicated that there may be scenarios where plaintiffs allege specific enough harm such that jurisdiction under § 1581(i) might

---

[2] *See Phoenix Metal Co. v. United States*, 2024 WL 2891503, at *8 (Ct. Int'l Trade June 10, 2024), *appeal dismissed*, No. 2024-2222, 2024 WL 4534014 (Fed. Cir. Oct. 21, 2024); *Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*, No. 20-03914, 2023 WL 4288346, at *7-8 (Ct. Int'l Trade June 22, 2023); *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (Ct. Int'l Trade 2022); *Diamond Tools*, 545 F. Supp. 3d at 1341-42.

[3] While not relevant to the jurisdictional analysis, the Court in *Superior Commercial Solutions* did not invalidate Custom's imposition of interim measures like plaintiff advocates for here.  Rather, the Court required CBP to rescind interim and final measures on certain entries as a remedy for missing the 15-day deadline in 19 U.S.C. § 1517(b)(1) and for not notifying Superior Commercial Solutions of the initiation of the investigation on the date of initiation.  *Superior Commercial Solutions*, 811 F. Supp 3d 1363 at 1376.  Here, CBP did not delay in notifying ICON EV of the commencement of its EAPA investigation.

be warranted. *Hysla v. United States*, 22 C.I.T. 44 (1998); *Phoenix Metal Co. v. United States*, 2024 WL 2891503 at \*9 (Ct. Int'l Trade June 10, 2024). However, subsequent to *Hysla*, the Federal Circuit has consistently held that "mere allegations of financial harm do not render a remedy established by Congress manifestly inadequate." *Sunpreme Inc.,* 892 F.3d at 1193 (Fed. Cir. 2018) (citing *Int'l Custom Prods., Inc v. United States*, 467 F.3d 1324, 327 (Fed. Cir. 2006)). Nor can ordinary delay serve as the basis for manifest inadequacy; "delays inherent in the statutory process do not render it manifestly inadequate." *Id.* (quoting *Int'l Custom Prods.*, 467 F.3d at 1327). Rather, the predicate steps "must be an 'exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'" *Id.* at 1193-94 (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008)); *Nat'l Nail Corp. v. United States*, 335 F. Supp. 3d 1321, 1327 (Ct. Int'l Trade 2018) (same).

The Federal Circuit's decision in *International Custom Products* is instructive. In that case, an importer sought to invoke jurisdiction under section 1581(i), alleging that it would face "many forms of financial hardship" — including an imminent threat of bankruptcy — if it had to resort to the remedy available under 28 U.S.C. § 1581(a). *Int'l Custom Prods.*, 467 F.3d at 1327. The Federal Circuit rejected the argument that these hardships or the financial distress inherent in awaiting adjudication rendered the available remedy manifestly inadequate. *Id.* at 1327-28 (noting that the Court had rejected similar claims in *American Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1549 (Fed. Cir. 1983)). The Court additionally held that "assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *Id.* at 1327 (citing *Miller*, 824 F.2d at 964; *Am. Air Parcel*, 718 F.2d at 1550–51; *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1557 (Fed. Cir. 1988)); *see also CP Kelco (Shandong) Biological Co. v. United States*, 145 F. Supp. 3d 1366, 1376 (Ct. Int'l Trade 2016) (same). The

12

Court further cautioned that "[t]o allow a party to elect to proceed under section 1581(i), without having first availed himself of the remedy provided by section 1581(c), would undermine the integrity of the clear path Congress intended a claimant to follow." *Int'l Custom Prods.*, 467 F.3d at 1328 (citation omitted); *Nat'l Corn Growers*, 840 F.2d at 1557 ("Because appellees circumvent the proper procedures of section 1516, fairness dictates that only the most extraordinary of circumstances would permit the invocation of jurisdiction under section 1581(i).").

Plaintiff claims jurisdiction under § 1581(c) is manifestly inadequate because of the economic harm it faces from compliance with the law. Compl. at ¶ 14. However, the statutory scheme and Federal Circuit precedent precludes plaintiff from bring challenges to an ongoing investigation. "That importers here could fashion a more desirable remedy does not make the remedy fashioned by Congress . . . inadequate." *Am. Air Parcel*, 718 F.2d at 1551; *see CP Kelco*, 145 F. Supp. 3d at 1377 ("Congress has not envisioned an administrative process where the Court is to co-administer the statute with Commerce with each decision that it makes"); *Erwin Hymer Group N. Am. V. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019) (overly broad interpretation of § 1581(i) would threaten to swallow specific grants of jurisdiction contained within other subsections). Accordingly, the Court should dismiss the complaint for this independent reason.

## III. Plaintiff's Case is Unripe Because it Challenges Nonfinal Agency Action

Federal courts are "without jurisdiction to consider . . . claims that are not ripe." *Martin v. United States*, 894 F.3d 1356, 1360 (Fed. Cir. 2018). The ripeness doctrine "has both constitutional and prudential dimensions." *Fisher v. United States*, 402 F.3d 1167, 1176 (Fed. Cir. 2005); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993) ("We have noted that ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."). The ripeness doctrine prevents the

13

courts, "through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). There is a two-factor test for determining if a case is ripe: (1) "the fitness of the issues for judicial decision[;] and" (2) "the hardship to the parties of withholding court consideration." *Id.* at 149; *accord Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1348 (Fed. Cir. 2015).

The first ripeness factor – fitness for judicial review – involves a question of whether the challenged conduct constitutes a final agency action. *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1363 (Fed. Cir. 2008)). "As a general matter, two conditions must be satisfied for an agency action to be 'final':" (1) "the action must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature;" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 1362 (citation omitted). The second ripeness factor evaluates whether there will be an "undue" hardship by withholding judicial consideration. *Id.* at 1363-64.

As the "moniker" suggests, "interim measures are temporary." *Compare* Pl. Mot. at 16, *with Diamond Tools Technology LLC v. United States*, 545 F. Supp 1324, 1341 (Ct. Int'l Trade 2021). CBP has yet to complete its EAPA investigation. As explained above, after CBP issues its final determination, to the extent the agency finds that plaintiff has evaded the AD/CVD duties, plaintiff will be able to assert their claims in this Court by commencing an action using the prescribed jurisdictional pathway under 28 U.S.C. § 1581(c). However, currently, there is no final agency action for this Court to review. The plain language of section 1517(g), which only authorizes judicial review of final determinations under section 1517(c), clearly manifests

14

legislative intent that interim measures imposed at an early stage of an investigation are not fit for judicial review.  Likewise, plaintiff's claims are also speculative.  CBP has not yet made its final determination and the agency could ultimately reach a final negative determination of evasion.  Alternatively, Commerce could find that the merchandise is not subject to the Orders, in which case, the plaintiff would receive a refund of the payments made while the interim measures were in place.  In either scenario, plaintiff would owe no AD/CVD duties.  As the Federal Circuit has explained, the burden of waiting until the conclusion of administrative proceedings is insufficient in kind and legal effect to constitute "final agency action."  *U.S. Ass'n of Importers of Textiles & Apparel v. United States*, 413 F.3d 1344, 1349-50 (Fed. Cir. 2005) (*USAITA)*.  Whatever that burden may be, it is not an undue burden, because all parties must await the final determination in an EAPA investigation before commencing an action under section 1581(c).  *See id.*

Plaintiff's claims lack subject matter jurisdiction.  Alternatively, plaintiff's claims are not ripe for judicial review.  Therefore, all three counts of plaintiff's complaint should be dismissed.

**OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINIG ORDER ARGUMENT**

**IV.    Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order Must be Denied**

**A.  Standard for Granting a Preliminary Injunction**

A preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis and citation omitted).  It is "never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  "To receive a preliminary injunction, the movant must show '(1)

likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest.'" *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed. Cir. 2019) (quoting *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018)). "[C]ase law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (citation omitted). Moreover, jurisdictional arguments must not be ignored when ruling on preliminary injunction motions. *See U.S. Ass'n of Importers of Textiles & Apparel v. U.S. Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005) ("The question of jurisdiction closely affects the Association's likelihood of success on its motion for a preliminary injunction. Failing to consider it was legal error.").

### B. Plaintiff Has Failed to Establish a Likelihood of Success on The Merits

### i. The Court Lacks Subject Matter Jurisdiction

Plaintiff has not established a likelihood of success on the merits. As previously discussed, the Court lacks subject matter jurisdiction to entertain plaintiff's claims under subsection (i). *See infra* Sections I-III. Because this Court lacks jurisdiction, plaintiff has not shown a likelihood of success on the merits of its claims and, for this reason alone, plaintiffs' request for injunctive relief should be denied. *See United States Ass'n of Imps. of Textiles & Apparel*, 413 F.3d at 1350 ("the government's arguments *as to jurisdiction* demonstrate that the Association is not likely to succeed in this litigation") (emphasis added).

Even assuming the Court does have subject matter jurisdiction, plaintiff's request for injunctive relief should be denied. Plaintiff's request to enjoin CBP from carrying out its express statutory obligations under EAPA is an affront to the rule of law. Regardless, on the merits,

16

plaintiff fails to demonstrate a likelihood of any error in CBP's rational and cogent explanation for the imposition of interim measures in this case.  *See* Pl. Mot. Exh. 3, 4/6/26 Notice.

**ii.    ICON EV Has No Constitutional Right to Engage in International Trade Free of Interim Measures When CBP Has Determined a Reasonable Suspicion of Evasion**

Furthermore, Plaintiff is unlikely to succeed on the merits of its due process challenge.  The Fifth Amendment to the Constitution prohibits the deprivation "of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Thus, in every due process challenge, the first inquiry "is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citations omitted).  "A protectable interest must be more than a unilateral expectation."  *Am. Ass'n of Exps. & Imps.-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 571 (1972)).  "Those seeking constitutional protection under the due process clause must point to a 'legitimate claim of entitlement' prior to any consideration of the Government's constitutional obligations."  *Id.* (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974)).  However, if a protected interest exists, the court then determines what "procedural protections [] the particular situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  This analysis generally requires consideration of three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.*

It is well established that a company does not have a constitutionally protected property interest in any rate of duty, an importation, or even engaging in international trade.  *See, e.g., Bd.*

17

*of Trustees of the Univ. of Ill. v. United States*, 289 U.S. 48, 57 (1933) ("The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted. No one can be said to have a vested right to carry on foreign commerce with the United States."); *Buttfield v. Stranahan*, 192 U.S. 470, 497-98 (1904); *Arjay Assocs., Inc. v. Bush*, 891 F.2d 894, 896 (Fed. Cir. 1989) ("It is beyond cavil that no one has a constitutional right to conduct foreign commerce in products excluded by Congress.") (citations omitted) *Am. Ass'n of Exporters & Importers-Textile & Apparel Grp.*, 751 F.2d at 1250.

Plaintiffs have no protected right to engage in international trade, let alone trade that CBP reasonably suspects to have evaded the Orders. *See Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (citing, *e.g.*, *Norwegian Nitrogen Prods. v. United States*, 288 U.S. 294, 318 (1933); *A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997); *Am. Ass'n of Exp. & Imp.-Textile & Apparel Grp.*, 751 F.2d at 1250). As this Court acknowledged in *Phoenix Metal Co.,* "without a constitutionally cognizable interest in either 'liberty' or 'property,' the due process inquiry ends." *Phoenix Metal Co.*, 2024 WL 2891503 at *9. However, even if plaintiff has some property right, the Court must consider the *Mathews* factors and examine the specific procedural safeguards the situation demands and what due process ought to be afforded. But, as the Supreme Court has explained, "'[d]ue process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." *Hannah v. Larche*, 363 U.S. 420, 442 (1960).

Here, as discussed above, the EAPA statutory scheme affords notice and opportunity to be heard, which are the touchstones of the due process analysis. Furthermore, CBP, by regulation, has created additional notice and opportunities to participate that are available to the plaintiff during the investigation. *See* 19 CFR Part 165 Subpart B, C. Plaintiff will have several

18

opportunities during CBP's EAPA investigation to argue its case and to appeal any decision through a robust administrative process. Specifically, after CBP imposes interim measures, the EAPA regulations provide parties to the investigation with several opportunities to submit information and arguments. *See* 19 C.F.R. § 165.23 (procedures for voluntary submission of information); 19 C.F.R. § 165.26 (procedures for submission of written arguments). And after CBP makes any initial determination of evasion under 19 U.S.C. § 1517(c), the statute and regulations allow a party who is not satisfied to request a *de novo* administrative review and allow other interested parties to respond. 19 U.S.C. § 1517(f); 19 C.F.R. §§ 165.41, 165.42. Therefore, even if plaintiff would have a protected interest (and it does not), the robust statutory and regulatory procedures will guarantee plaintiff notice and an opportunity to be heard. Plaintiff fails to demonstrate that these procedures are inadequate. For these reasons, plaintiff is unlikely to succeed on the merits.

### C. Plaintiff Has Failed to Establish Irreparable Harm Because Economic Injury Does not Outweigh Compliance with the Law

Plaintiffs seeking an injunction bear an "extremely heavy burden" to establish irreparable harm. *Shandong Huarong General Group v. U.S*, 122 F. Supp. 2d 143,146 (Ct Int'l Trade 2000). To satisfy this standard, plaintiff must offer more than "speculative" evidence; they must demonstrate that they face an "immediate and viable" threat of irreparable harm. *Otter Products LLC v. U.S*, 37 F. Supp. 1306, 1315 (Ct. Int'l Trade 2014) (quoting *Kwo Lee, Inc. v. United States*, 24 F. Supp. 3d 1322, 1326, 1328 (Ct. Int'l Trade 2014) (holding that imminent and immediate bankruptcy constituted irreparable harm); *Sumecht*, 331 F.Supp. 3d at 1412 (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)). As the Federal Circuit explained in *Zenith*: "A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing actual threat must be shown." *Zenith*,

19

710 F.2d at 809 (citing *S.J. Stile Assoc.v. Snyder*, 646 F.2d 522, 525 (C.C.P.A. 1981)).   And, as *Otter* recognized, "[t]he threat of irreparable harm must be 'demonstrated by probative evidence,'" and "'cannot be determined by surmise.'"  37 F. Supp. 3d at 1315 (quoting *Am. Inst. for Imported Steel Inc. v. United States,* 600 F. Supp. 204, 209 (Ct. Int'l Trade 1984), and *Elkem Metals Co. v. United States,* 135 F. Supp. 2d 1324, 1331 (Ct. Int'l Trade 2001); *see also Ashley Furniture Indus. LLC v. United States*, 569 F. Supp. 3d 1261, 1275-78 (Ct. Int'l Trade 2022).

Allegations of significant monetary injury do not constitute irreparable harm.  *Shree Rama Enter. v. United States*, 983 F. Supp. 192, 195 (Ct. Int'l Trade 1997); *see also infra* Section II B. In *Shree Rama*, the Court found no irreparable harm in a case where a plaintiff claimed, "significant and permanent monetary injury as a consequence of posting large cash deposits."  *Id.* In *Shree Rama* like here, even though the plaintiffs had submitted customer letters and descriptions of conversations stating that the customers had or would switch suppliers rather than pay the higher deposit rates, the Court found the plaintiffs' showing "insufficient."  *Id.*  Finding no threat of immediate extinction, the Court held that the *Shree Rama* plaintiffs did not meet the standard for showing irreparable harm.  *Id.*  The Court further explained that even allegations of bankruptcy would be "weak evidence" if based on affidavits from interested parties — absent "evidence from independent sources" or "hard evidence" of the serious permanent harm that would result.  *Id; see also Shandong Hurang*, 122 F. Supp 2d at 146-47 (concluding that plaintiff failed to establish irreparable harm when it submitted affidavits from customers, noting "affidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction).

Plaintiff is not the first party to come before this court claiming that it would go out of business if it had to pay duties.  For example, in *Corus Group v Bush*, the plaintiff argued that it suffered irreparable harm because paying tariffs "would require it to close the plant."  *Corus Group*

20

*PLC v. Bush*, 217 F.Supp.2d 1347, 1355 (Ct. Int'l Trade 2002).  The court rejected this argument, concluding that finding irreparable harm under plaintiff's "close the plant" theory would force the court "to do so in any challenge… because every plaintiff could argue that increased tariffs would cause revenue shortfalls possibly resulting in either operating at a loss or plant closure at some future date." *Id*. at 1355.

Allegations of economic harm, however severe, are not a reflexive excuse to avoid routine compliance with the trade laws and the Orders.  Accepting plaintiff's "close the business" argument would lead to a flood of challenges forewarned by the *Corus Group* court.  Regardless, ICON EV has not alleged the level of harm that this Court indicated might raise sufficient due process concerns.  Here, ICON EV alleges that the interim measures will "put ICON out of business" and result in the loss of goodwill and reputation.  Pl. Mot. at 18.  Yet, ICON EV has not put forward any evidence that it will file for bankruptcy, or has taken any concrete steps to do so.  Regardless, a bankruptcy filing would not necessarily require a liquidation of the business or abandonment of any legal right to judicial review under section 1581(c) in any event, as many businesses emerge from a bankruptcy reorganization each year with a restructuring of their liabilities.  Moreover, [[███████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████]]

Furthermore, ICON EV has not demonstrated why an asset-based loan (ABL) is the only way it could obtain financing.  Pl. Mot. at 6-7.  Plaintiff also appears to be backed by the private equity firm Landon Capital Partners.  *See* Landon Capital Portfolio *available at* https://www.landoncapital.com/portfolio.  Plaintiff fails to show that it could not turn to Landon Capital or its [[███████████]] to pay the interim measures that resulted from Customs reasonable

21

suspicion that it evaded the Orders. *See* Pl. Mot. Exh. 7. In addition, plaintiff does not owe duties yet on all entries that are subject to the interim measures. Many of those entries have been extended under 19 U.S.C. 1517(e)(2) pursuant to 19 U.S.C. § 1504(b), and as such, no duties are owed on those entries at this time while the investigation is pending. Plaintiff bears the burden to demonstrate irreparable harm, and yet its factual assertions raise more questions than they answer, which is not sufficient.

Plaintiff's allegations of irreparable harm also are speculative and unfounded. Plaintiff has only put forward self-serving declarations, like those declarations the court rejected in *Shandong Hurang*. 122 F. Supp 2d at 146-47. Plaintiff has not put forward objective evidence that supports its assertions. Furthermore, the alleged harm is potentially temporary if CBP in its final determination finds that ICON EV did not engage in a scheme to evade AD Orders. Therefore, plaintiff has not proven an inability to pay the interim measures. It has, however, demonstrated that it does not want to pay the interim cost associated with a finding of a reasonable suspicion of evasion of the Orders. But a subjective desire of a plaintiff to avoid the costs of compliance with the remedial trade laws and the Orders, no matter how great, does not amount to cognizable and irreparable harm.

### D. The Balance of Hardships and Public Interest Factors Weigh in Favor of Denial Because an Injunction Would Cast Doubt on the Constitutional Validity of EAPA and Injure Lawful U.S. Industry

The purpose of EAPA was to "empower the U.S. government and its agencies… to identify proactively and thwart evasion and earlier stages to improve enforcement of U.S. trade laws including by ensuring full collection of AD and CVD duties and, thereby, preventing a loss in revenue." *Diamond Tools Technology*, 545 F.Supp at 1351. As Plaintiff concedes, CBP has a "legitimate interest in protecting the revenue." Pl. Mot. at 21. Indeed, CBP is obligated to take

measures to protect the revenue "to the maximum extent practicable." 19 U.S.C. § 1484(a)(2)(C). But EAPA investigations are concerned with more than just the public fisc.

One of the principal concerns underlying the enaction of EAPA was that Customs investigations into antidumping and countervailing duty evasion often took a long time to initiate, allowing importers suspected of evasion to continue evading and benefitting from unfair trade practices, while leaving the domestic industry to suffer as a result. *See* H.R. Rep. No. 114-114 at 85 (2015); S. Rep. No. 14-45, at 12 (2015). For years, Congress and domestic industries expressed concern that unscrupulous actors were continuing to find ways to evade duties, leaving the domestic industry at risk. U.S. Gov't Accountability Off., GAO-12-551, Antidumping and Countervailing Duties: Management Enhancements Needed to Improve Efforts to Detect and Deter Duty Evasion 1 (2012) (cited in H.R. REP. No. 114-114 at 85); *see* 162 CONG. REC. S836-02 (2016) (statement of Sen. Hatch). Congress expressed concern that U.S. businesses had little recourse because Customs' response to their allegations of evasion was slow or ineffective. *See id.* In particular, the domestic industry at issue in this case has suffered material injury due to unfair competition in the form of dumping and countervailable subsidies prior to entry of the Orders. *Low Speed Personal Transportation Vehicles from China*, 90 Fed. Reg. 38,176 (Int'l Trade Comm'n Aug. 7, 2025). Therefore, it is likely that the requested TRO and PI will cause further injury to this domestic industry if plaintiff does not have to post cash deposits in accordance with the interim measures and consistent with the Orders. *See id.*

The concerns of Congress that led to the enactment of EAPA continue to manifest in cases before this Court. *See, e.g.*, *Phoenix Metal Co.*, 2024 WL 2891503, at *4 (describing a company's history of engaging in a transshipment scheme, and how every time they detected that CBP had imposed interim measures against them, they used corporate shells to evade them). A TRO or PI

would frustrate EAPA, harm the domestic industry, deprive the Government of the security of cash deposits, and undermine the public interest in fair competition under the remedial trade laws and the Orders. Moreover, pre-interim measures notice would allow importers an opportunity to obscure the evidence and change their practices before CBP has a chance to impose interim measures, thwarting CBP's investigative efforts and depriving the government of the revenue. In light of EAPA's statutory command for CBP to impose interim measures, the balance of harms and public interest factors strongly outweigh any assertion of irreparable harm to the plaintiff.

Plaintiff also fails to establish that granting a preliminary injunction is in the public interest. As the Supreme Court has recognized, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Here, the plaintiff must comply with interim measures when required by 19 U.S.C. § 1517(e) just like any other plaintiff that is subject to an EAPA investigation. Granting plaintiffs' motion will encourage other parties to attempt to circumvent the congressionally-mandated process by raising the very same claim in other EAPA investigations, and thus undermine the entire statutory purpose of EAPA. Neither the financial harms alleged, nor any "delays inherent in the statutory process," warrant an extraordinary remedy of an injunction that would prohibit CBP from complying with the statutory command. *Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *see also* 19 U.S.C. § 1517(e). Thus, the balance of hardships and the public interest weigh overwhelmingly against granting plaintiffs' motion.

## CONCLUSION

For these reasons, defendants respectfully request that the Court grant the motion to dismiss for lack of subject matter jurisdiction. Alternatively, Defendants respectfully request that the Court deny Plaintiff's motion for a preliminary injunction and temporary restraining order

Respectfully submitted,

OF COUNSEL

TAMARI J. LAGVILAVA
Senior Attorney
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, D.C. 20229
(202) 344-2940
tamari.j.lagvilava@cbp.dhs.gov

April 17, 2026

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9303

By: /s/ Adam A. Vischio
ADAM A. VISCHIO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, NY 10278
(202) 305-5528

*Attorneys for Defendants*

25

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in the Standard

Chambers Procedure 2(B)(1), and contains 9,383 words.

<table>
<tr><td></td><td>/s/ Adam A. Vischio</td></tr>
<tr><td>Dated: April 17, 2026</td><td>Adam Angelo Vischio</td></tr>
</table>