**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **ICON EV LLC,**<br>　　　　　　　　**Plaintiff,**<br>　　v.<br><br>**UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,**<br>　　　　　　　　**Defendants.** | **Before: Hon. Jane Restani**<br>　　　　　　　**Judge**<br><br>**Court No. 26-02759** |

**PROPOSED DEFENDANT-INTERVENOR AMERICAN PERSONAL TRANSPORTATION VEHICLE MANUFACTURERS COALITION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Proposed Defendant-Intervenor American Personal Transportation Vehicle Manufacturers Coalition ("Coalition"), by counsel, hereby opposes Plaintiff ICON EV LLC's ("ICON") Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion"). This response is submitted on an accelerated basis to comply with the opposition deadline set forth in the Court's paperless order of April 15, 2026, ECF No. 17. The Coalition reserves its right to respond to ICON's Complaint separately and in due course.

**INTRODUCTION**

In enacting the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517, Congress authorized a comprehensive process through which U.S. Customs and Border Protection ("CBP") investigates and remedies importers' evasion of Antidumping ("AD") and Countervailing ("CVD") Duty orders ("AD/CVD Orders") issued by the U.S. Department of Commerce ("Commerce"). The EAPA process includes a brief, initial investigation period that may conclude with the imposition of temporary interim measures, an opportunity for importer and other interested party participation

1

prior to issuance of a final decision, an independent administrative review process before CBP, and robust judicial review, including before this Court.

Rather than avail itself of EAPA's congressionally mandated procedures—including the jurisdictional requirement that it obtain a final agency decision before pursuing an appeal—Plaintiff ICON asks this Court to prematurely intervene on its behalf. ICON's request is unprecedented, the relief it seeks is unauthorized, and its substantive position is meritless. The Motion should be denied.

ICON cites no case imposing injunctive relief against CBP's imposition of interim measures that are authorized by law. Granting ICON's request would be a procedural first-of-its-kind, would open the floodgates to importers who are dissatisfied with CBP's interim rulings and uninterested in awaiting final determinations, and would frustrate Congress's intent in enacting EAPA and its procedures.

ICON's petition is an unauthorized attempted end-run around the Court's limited grant of subject-matter jurisdiction. Congress set forth the circumstances under which this Court can review CBP's EAPA determinations and those circumstances do not exist here. As such, the Court does not have jurisdiction over this dispute.

ICON cannot demonstrate its substantive entitlement to injunctive relief. To prevail, it must show likelihood of success on the merits, irreparable harm, that the equities tip in its favor, and that relief is in the public interest. ICON gives short shrift to the latter elements, and its position on the others is entirely based on the assumption that CBP's determinations are wrong, a question that is not ripe for adjudication. The extraordinary relief ICON seeks is not warranted.

## BACKGROUND

**I.      THE COALITION, COMMERCE'S AD/CVD ORDERS, AND ICON'S EVASION.**

The Coalition comprises the two largest U.S. manufacturers of low speed personal transportation vehicles ("LSPTV"). In June 2024, following a surge of low-priced imports of Chinese LSPTVs into the United States that materially injured U.S. LSPTV manufacturers and impeded their ability to compete fairly in the U.S. market, the Coalition filed AD/CVD petitions with Commerce and the U.S. International Trade Commission ("Commission") asking that the U.S. government investigate imports of Chinese LSPTVs and, if appropriate, impose AD and CVD duties on subject imports.

Proceedings before Commerce took place over the course of 15 months from June 2024 to August 2025. As part of the scope proceedings before Commerce, the Coalition expressed specific concerns that importers would evade the duties by breaking LSPTVs down into parts and pursue other evasion schemes, such as falsely claiming that the products originated in countries other than China. In a rare decision, Commerce added a certification provision to the scope language during the original investigation, requiring importers to certify whether imported LSPTV parts and subassemblies are subject to the AD and CVD orders ("Orders"). Specifically, importers were required to certify that neither they nor a broadly defined related entity will assemble component parts after import to produce an LSPTV. Commerce did this in direct response to the Coalition's concerns regarding the potential for evasion.

The Orders were published in the *Federal Register* on August 12, 2025. *Certain Low-Speed Personal Transportation Vehicles from the People's Republic of China*, 90 Fed. Reg 38,759 (Dep't Commerce Aug. 12, 2025) (amended final antidumping duty deter. and antidumping duty order; amended final deter. of countervailing duty inv. and countervailing duty order) ("AD/CVD Order"). The Orders imposed AD rates up to 478.09% and subsidy rates up to 691.58%. *See id.* at

38,760-62. Duties have been collected at those rates on imports of subject LSPTVs since the issuance of the Orders. However, preliminary duties were collected far before the Orders were issued. On December 6, 2024 and January 30, 2025, Commerce published its preliminary AD and CVD determinations, respectively, after which preliminary cash deposits were collected at similarly high rates on subject imports from ICON and all other importers. *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China*, 89 Fed. Reg. 96,942 (Dep't Commerce Dec. 6, 2024) (prelim. affirm. countervailing duty deter., prelim. affirm. deter. of critical circumstances, in part, and alignment of final deter. with final antidumping duty deter.); *Certain Low Speed Personal Transportation Vehicles from the People's Republic of China*, 90 Fed. Reg. 8,517 (Dep't Commerce Jan. 30, 2025) (prelim. affirm. deter. of sale at less-than-fair-value inv., prelim. affirm. deter. of critical circumstances, postponement of final deter. and extension of provisional measures). Further, in their final determinations, the Commission and Commerce made the rare finding of affirmative critical circumstances, applying duties retroactively as far back as September 7, 2024, due to the aggressive manner in which LSPTV importers were rushing in imports to beat and avoid the duties. *See* 19 C.F.R. § 351.206(a); AD/CVD Order at 38,760.

Before the Orders were even finalized, the Coalition received evidence suggesting that ICON and other importers were evading the Orders by following the same patterns that the Coalition raised in the AD/CVD proceedings as areas of concern. After collecting additional evidence demonstrating a pattern of evasion, the Coalition submitted a request for investigation with CBP, which was initiated on December 30, 2025. In the course of that investigation, CBP issued several CF-28 requests for information to ICON, affording ICON an opportunity to provide specific information.

On March 30, 2026—ninety days after initiating its investigation—CBP timely notified ICON that following its investigation, it reasonably suspects that ICON is evading Commerce's AD/CVD Orders. CBP thus implemented interim measures, including suspension of liquidation for unliquidated entries that entered before and after the investigation commenced, rejection and re-file for entries that are within the summary reject period, and live entry of imports from China and Vietnam going forward.

## II.    EAPA PROCESS IS DICTATED BY STATUTE AND REGULATION.

Through EAPA, Congress enacted a precise, finely tuned process by which "interim measures" may be imposed on AD/CVD evaders and by which judicial review may be obtained of such measures. *See* Pub. L. No. 114-125, Tit. IV, §§ 401–21, 130 Stat. 122, 155–69 (2016), codified at 19 U.S.C. §§ 4361–62, 4371–72, 1677f, 4373–75, 1517, 1581(c); *see also* 19 C.F.R. §§ 165.0–47 (implementing EAPA).

Under EAPA, CBP must initiate an investigation into an importer within fifteen business days after accepting a formal allegation that the importer is engaging in "evasion" to avoid AD/CVDs on their imports. 19 U.S.C. § 1517(a)(5)(A), (b)(1)–(2). Within ninety calendar days after initiating such an investigation, CBP must "decide based on the investigation if there is a reasonable suspicion that such covered merchandise was entered into the customs territory of the United States through evasion." *Id.* § 1517(e). If CBP makes this "reasonable suspicion" finding, then CBP must take three actions:

- suspend the liquidation of each unliquidated entry of such covered merchandise that entered on or after the date of the initiation of the investigation;
- extend the period for liquidating each unliquidated entry of such covered merchandise that entered before the date of the initiation of the investigation; and
- take such additional measures as the Commissioner determines necessary to protect the revenue of the United States, including requiring a single transaction

5

> bond or additional security or the posting of a cash deposit with respect to such covered merchandise.

*Id.* If CBP takes such measures, it "will issue a notice of th{e} decision" to "the parties to the investigation within five business days after taking interim measures." 19 C.F.R. § 165.24(c); *accord* § 165.15(d)(1).

From there, while the investigation remains ongoing, "parties under investigation have mechanisms through which to respond to the allegations of evasion" and to "contest . . . the imposition of interim measures." *Aspects Furniture Int'l, Inc. v. United States*, 607 F. Supp. 3d 1246, 1273 (CIT 2022). For one, they may "submit additional information . . . to negate . . . the allegation of evasion." 19 C.F.R. § 165.23(b). And they can submit written arguments to rebut the allegations of evasion. *Id.* § 165.26(a). If such information so warrants, and while the investigation continues, CBP may reconsider its decision to impose the interim measures. *See, e.g.*, *Syneren Techs. Corp. v. United States*, 166 F.4th 1040, 1044 (Fed. Cir. 2026) ("{A}dministrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." (cleaned up)).

Following that initial 90-day period, CBP then generally has an additional 210 calendar days (*i.e.*, 300 calendar days from the initiation of the investigation) to formally make a "determination, based on substantial evidence," whether the importer has engaged in evasion. 19 U.S.C. § 1517(c)(1)(A). Parties under investigation are able to participate in this phase of the investigation, including through submission of evidence and written arguments. And CBP typically conducts on-site verification of the importer or related companies in question. If the investigation results in a determination that no evasion occurred, then "CBP will cease applying any interim measures taken," 19 C.F.R. § 165.27(c), "liquidate the entries in the normal course," *id.*, and return

"any additional duties or cash deposits collected . . . with interest," *Aspects Furniture*, 607 F. Supp. 3d at 1273 (citing 19 C.F.R. § 24.36).

Within thirty business days after CBP makes that determination, EAPA provides that the parties aggrieved by that determination may "file an appeal" with CBP "for *de novo* review of the determination." § 1517(f)(1). CBP then has sixty business days to complete that review. § 1517(f)(2). Then, within thirty business days of the completion of administrative review, the aggrieved parties may seek judicial review of CBP's determination in this Court. § 1517(g)(1).

### i.    CBP FOLLOWED THE STATUTORY AND REGULATORY PROCESSES HERE.

In considering the Coalition's requests for investigation into ICON's practices under EAPA, CBP followed the procedures established by the statute and its implementing regulations and awarded measures that are expressly authorized by law. It is clear from ICON's papers that the crux of its complaint is that it believes CBP arrived at the wrong conclusion, even in spite of information ICON contends that it provided. ICON's Complaint is *styled* as a due process challenge, but it is plainly an improper effort to obtain an interlocutory appeal.

## ARGUMENT

### I.    THE COURT OF INTERNATIONAL TRADE DOES NOT HAVE SUBJECT-MATTER JURISDICTION OVER THIS CASE

#### i.    Jurisdiction under 28 U.S.C. § 1581(i)(1)(D) is not available here.

The Court should deny Plaintiff's Motion and dismiss the case because it lacks subject-matter jurisdiction over this dispute. Plaintiff relies on 28 U.S.C. § 1581(i)(1)(D) as the source of the Court's jurisdiction over this dispute. *See, e.g.*, Complaint ¶¶ 11–16; Motion at 14–15. But jurisdiction under that provision is not available here.

7

Section 1581 sets forth the "jurisdictional limits of this Court." *Former Emp. of Drive Sol Global Steering, Inc. v. U.S. Sec'y of Labor*, 181 F. Supp. 3d 1369, 1374 (Ct. Intl. Trade 2016). And that "statute must be strictly construed." *Id.* at 1378.

Section 1581 sets forth eight heads of jurisdiction, § 1581(a)–(h), after which it sets forth a catch-all provision, § 1581(i). "Section 1581(i) is the Court's 'residual' jurisdictional provision." *Ereğli Demir Ve Çelik Fabrikalari T.A.Ş.* v. *U.S. ITC*, 723 F. Supp. 3d 1354, 1364 (Ct. Intl. Trade 2024). Residual jurisdiction is "strictly limited." *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992). Thus, jurisdiction under this provision is unavailable "when jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate." *Id.* (internal quotation marks omitted) (emphasis added). ("The party asserting § 1581(i) jurisdiction has the burden to show that such alternative remedy would be manifestly inadequate." *Rimco Inc. v. United States*, 98 F.4th 1046, 1052 (Fed. Cir. 2024)).

In other words, when another jurisdictional provision *would be available* following the completion of the administrative process, residual jurisdiction may not be invoked, even if those proceedings are not complete at the time suit is filed. *See, e.g.*, *United States v. Uniroyal, Inc.*, 687 F.2d 467, 472 (C.C.P.A. 1982) (emphasizing that § 1581(i) is not to "be used generally to bypass administrative review by meaningful protest"); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 986 F. Supp. 2d 1381, 1384 (Ct. Intl. Trade 2014) ("That judicial review may be delayed by requiring a party to wait for Commerce's final determination in a {CVD} duty investigation is not enough to make judicial review under § 1581(c) manifestly inadequate."). When "the *type* of review sought by a plaintiff asserting the court's § 1581(i) jurisdiction" is "already . . . provided for" by another provision of § 1581—even if review under another provision

of § 1581 is not yet available for lack of finality—residual jurisdiction is unavailable. *Borusan Mannesmann Boru Sanayi ve Ticaret A.S.*, 986 F. Supp. 2d at 1385 (emphasis added).

Here, another jurisdictional provision of § 1581 squarely applies. Under § 1581(c), the Court has "exclusive jurisdiction of any civil action commenced under . . . 517 of the Tariff Act of 1930." *Norcal/Crosetti Foods, Inc*., 963 F.2d at 358. Section 517, in turn, authorizes aggrieved parties following completion of EAPA review proceedings to seek judicial review in this Court regarding (1) the validity of the CBP's evasion determination and (2) the adequacy of its administrative review of any challenge to that determination. 19 U.S.C. § 1517(g)(1). And included within the scope of this review is procedural due process challenges to CBP's interlocutory imposition of interim measures prior to its final determination. *See, e.g.*, *Aspects Furniture*, 607 F. Supp. 3d at 1253–54, 1270, 1273 (exercising jurisdiction under § 1581(c) over such a challenge following CBP's final determination and exhaustion of administrative review under § 1517); *accord Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1331, 1339–41 (Ct. Intl. Trade 2021); *see also Vietnam Firewood Co. v. United States*, 466 F. Supp. 3d 1273, 1284 (Ct. Intl. Trade 2020) ("The court's review of Customs' determination as to evasion may encompass interim decisions subsumed into the final determination."); *Tianjun Magnesium Int'l Co. v. United States*, 32 CIT 1, 533 F. Supp. 2d 1327, 1337 (2008) (interim agency decisions are "subsumed in and/or superseded by the agency's final determination"). Thus, ICON's "remedy is to continue participating in the administrative proceedings . . . until they are concluded with the final determination at which point Plaintiffs may" pursue relief in accordance with § 1517 and § 1581(c). *Valeo N. Am., Inc. v. United States*, 277 F. Supp. 3d 1361, 1366 (Ct. Intl. Trade 2017).

Because jurisdiction is available under § 1581(c), ICON may not resort to § 1581(i) to sustain the Court's subject-matter jurisdiction unless it "show{s}" that § 1581(c) is "manifestly inadequate." *Rimco Inc.*, 98 F.4th at 1052. ICON fails to make such a showing.

This exception to the ordinary rules governing residual jurisdiction is narrow. *See* Jeanne E. Davidson & Zachary D. Hale, *Developments During 2006 Concerning 28 U.S.C. § 1581(i)*, 39 Geo. J. Int'l L. 127, 134 (2007) (discussing decisions exemplifying the "narrowness of the 'manifest inadequacy' exception to the rule against § 1581(i) jurisdiction where other jurisdictional options are available"). "Manifest inadequacy exists when, although there is jurisdiction under {} § 1581(a)–(h), filing suit under one of those subsections would be an exercise of futility, meaning that it is ***incapable of producing any result***." *Celik Halat v. Tel Sanayi A.S.*, 503 F. Supp. 3d 1249, 1253 (Ct. Intl. Trade 2021) (emphasis added) (cleaned up). Thus, "{n}either the burden of participating in the administrative proceeding nor the business uncertainty caused by such a proceeding is sufficient to constitute manifest inadequacy." *Id.*

Here, ICON's argument regarding manifest inadequacy turns on its contention that, absent immediate judicial intervention, it faces imminent bankruptcy. But binding precedent forecloses ICON's contention. In *International Custom Products v. United States*, for instance, the Federal Circuit held that review under § 1581(a) was not manifestly inadequate to permit jurisdiction under § 1581(i), even though the plaintiff alleged "many forms of financial hardship that would result from proceeding" under § 1581(a), "including an imminent threat of bankruptcy" that rendered "any available relief" thereunder futile due to the plaintiff's immediate "financial distress." 467 F.3d 1324, 1327 (Fed. Cir. 2006). Likewise, in *American Air Parcel Forwarding Co. v. United States*, the Federal Circuit rejected an attempt to bypass § 1581(h) for a due-process claim where the plaintiff claimed that § 1581(h) was inadequate in light of the "financial distress" it faced

10

absent immediate judicial review. 718 F.2d 1546, 1550–51 (Fed. Cir. 1983); *accord Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987) ("Miller says it has suffered 'the illegal deprivation of its property and resulting harm arising from the unlawful exercise of government authority.' However, mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate.").

*Hylsa v. United States*, relied on by ICON to argue otherwise, is neither apposite nor controlling. 22 CIT 44 (1998). First, the core holding of that case was that the entire proceeding was "improper" and could not be allowed to "go forward." *Id.* at 47–48; *see also Sahaviriya Steel Indus. Pub. Co v. United States*, 33 CIT 1402, 601 F. Supp. 2d 1355, 1361–62 (2009) (identifying *Hylsa* as part of a "line of cases in which the Court exercised its residual jurisdiction to prevent Commerce from continuing with an allegedly unlawful proceeding"); *Borusan Mannesmann Boru Sanayi ve Ticaret A.S.*, 986 F. Supp. 2d at 1389 (distinguishing related cases as involving an effort to "stop" an "illegal proceeding" before being "burdened with them"); *Valeo N. Am.*, 277 F. Supp. 3d at 1366–67 (same); Jeffrey M. Telep & Elizabeth E. Owerbach, *The Court of International Trade's Application of 28 U.S.C. § 1581(i) Jurisdiction in 2014*, 47 Geo. J. Int'l L. 187, 210 (2015) ("{T}he CIT still enforces subsection 1581(c) as the principal jurisdictional avenue for relief for challenges to {AD} and {CVD} duty proceedings, directing plaintiffs to wait until Commerce's determinations are final before challenging them under subsection 1581(c), ***unless the entire proceeding is beyond the bounds of the law and may be avoided in its entirety***." (emphasis added)). Second, to the extent *Hylsa* stands for the proposition that "grave economic harm" alone can render another jurisdictional fountainhead under § 1581 manifestly inadequate, it conflicts with binding circuit precedent and does not control. *See, e.g.*, *Celik Halat*, 503 F. Supp. 3d at 1254

11

(collecting circuit-level authorities for the proposition that "{f}inancial hardship resulting from review under § 1581(a)–(h) does not constitute manifest inadequacy").

And *NEC Corp. v. United States*, 151 F.3d 1361 (Fed. Cir. 1998), lends ICON no support on this point, either. There, awaiting review under § 1581(c) was deemed manifestly inadequate because the investigation in question was "preordained because of impermissible prejudgment." *Id.* at 1368. But ICON does not even argue, let alone show, that CBP's current investigation is a foregone conclusion.

### ii.    The APA does not confer jurisdiction over this dispute.

Because the Court does not have subject-matter jurisdiction in this case under § 1581(i), the Court need not decide whether ICON has a cause of action under the Administrative Procedure Act ("APA") to assert a claim actionable under § 1581(i). *See, e.g.*, *Am. Air Parcel Forwarding Co.*, 718 F.2d at 1552. But in any event, ICON does not.

Judicial review under the APA is available only to challenge, as relevant here, "final agency action"—not "preliminary, procedural, or intermediate agency action." 5 U.S.C. § 704. And finality for APA purposes requires both that (1) the agency action being challenged "mark{s} the 'consummation' of the agency's decisionmaking process" rather than being "of a merely tentative or interlocutory nature" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

The interim measures ICON seeks to challenge are not the "consummation' of the agency's decisionmaking process" and thus are not "final agency action" reviewable under the APA. *Id.* at 178 (citations omitted). *Celik Halat* is instructive. There, Commerce had made a preliminary determination in a CVD investigation adverse to the plaintiff, thereby imposing on it "a CVD subsidy and cash deposit rate of 135.06 percent" and "retroactively suspend{ing} liquidation of

{the plaintiff's} entries." 503 F. Supp. 3d at 1251–52. The plaintiff then sued and sought a temporary restraining order and preliminary injunction against Commerce. *Id.* at 1252. Commerce moved to dismiss, which the court granted. *Id.* As relevant here, the court recognized that the preliminary determination was "unreviewable" because it constituted "a mere step towards a final decision, and will later merge into the final decision," and so it could not be reviewed at the "preliminary juncture." *Id.* at 1254–55 (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 246 (1980)).

Likewise here, the interim measures are—by definition—preliminary steps as part of the investigation that will merge into CBP's final determination following completion of the investigation. So as in *Celik Halat*, so too here, such interim measures are not final, and their review "should abide review of the final order" in accordance with § 1517's finely tuned process. *See Standard Oil*, 449 U.S. at 244, 246, 246 n.14 (holding that issuance of an administrative complaint finding "reason to believe" that the recipient had violated federal law was not "final agency action" under the APA, even though the subsequent administrative proceedings "may last for months or years" and "result in substantial expense" to the recipient, and even though the recipient in that case claimed that "it will be irreparably harmed unless the issuance of the complaint is judicially reviewed immediately") (citation omitted).

ICON attempts to evade the finality requirement by arguing that, even if interim measures generally are non-final, in this case they are final because of the nature of the challenge ICON brings (raising a "purely legal question" about CBP's authority to issue them). But "pleading a legal question" to preliminary agency action does not convert that action into final action—to the contrary, "{i}n the APA context," finality turns on "the type of decision being challenged," not the nature of the challenge to it. *U.S. Ass'n of Importers of Textiles & Apparel v. U.S. Dep't of*

13

*Commerce*, 413 F.3d 1344, 1349–50 (Fed. Cir. 2005). So "even assuming that a so-called 'purely legal' challenge" to CBP's authority to impose interim measures "has been pled, the decision being challenged must still be a final agency action." *Id.* And as just discussed, those measures are non-final for APA purposes.

## II.    ICON Has Failed to Establish That A Temporary Restraining Order Is Warranted.

Even if this Court had jurisdiction over the dispute—which it does not—ICON would not be entitled to the relief it seeks. It is well settled that a "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

> A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

*Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014) (quoting *Winter*, 555 U.S. at 20). ICON cannot satisfy this test.

### i.    ICON is unlikely to prevail on the merits of its due process claim.

Most of ICON's brief is devoted to the reasons why it believes CBP's imposition of interim measures is not supported by the available evidence. ICON's only evidence on this point is a self-serving affidavit submitted by its CEO. *See* ECF No. 5-1. However, even if that were sufficient to substantiate its claims—it is not—the merits of CBP's evasion findings are irrelevant to the issue before the Court, which is whether CBP violated ICON's procedural due process rights by awarding interim measures that are authorized by statute. In ruling on this motion, the Court should disregard ICON's arguments regarding the merits of CBP's findings, which are not yet ripe for review.

To prevail on its claim that CBP violated its substantive due process rights, ICON has the "burden to establish a protected interest sufficient to give rise to a due process claim and to show

how the alleged due process violation works some sort of harm to that interest." *Am. Pac. Plywood, Inc. & LB Wood Cambodia Co., Ltd.*, 2023 WL 4288346, at *8 (2023); *see also Int'l Customs Prods., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) ("For a benefit to warrant the procedural protections of due process, a person clearly must have more than an abstract need or desire for it. He must, instead, have a legitimate claim of entitlement to it." (cleaned up)). ICON fails to identify the interest that it seeks to protect. *See* ECF No. 5 at 12. Instead, it likens live entry requirements to sanctions and suggests that complying with interim measures may require it to deposit a large sum of cash with customs. *Id*. It appears that ICON is seeking to protect a property interest in engaging in international trade without an obligation to pay duties.

However, it is well settled that ***"{a}n importer has no legitimate claim of entitlement to the right to engage in international trade, to import merchandise under a specific tariff classification or rate of duty, or to rely on the maintenance of a particular duty rate.***" *Am. Pac. Plywood*, 2023 WL 4288346, at *7 (internal quotations omitted) (emphasis added); *see also Int'l Customs*, 791 F.3d at 1337 ("Absent a right to a duty rate and its sustained existence, {Plaintiff} cannot contest the adequacy of the process provided, which here includes the pre-payment requirement.").

ICON's failure to identify a legally protected interest is dispositive and ought to end the Court's inquiry. But, if the Court were to consider the additional due process factors, ICON's proof falls short there as well.

The next factor to be considered is the risk of erroneous deprivation and the likely value of any additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As discussed above, Congress established carefully balanced procedures to govern EAPA claims which include provisions for notice, an opportunity to be heard, and provisions for robust judicial review. *See*,

15

*supra*, at 5-7. Congress's procedures allow for imposition of interim measures, but those measures are cash deposits, not final duties. As such, they are inherently temporary and subject to revision and reimbursement with interest. Further, "during the pendency of an EAPA investigation, parties under investigation have mechanisms through which to respond to the allegations of evasion." *Aspects Furniture*, 607 F. Supp. 3d at 1273. ICON has not availed itself of these mechanisms but instead ran to court seeking emergency interlocutory relief.

Notably, ICON does not suggest an alternative procedure that would better protect its purported rights. It alludes to meaningful opportunity and something short of a full blown evidentiary hearing, but its papers are devoid of any specific proposal for the Court to weigh. ECF No. 5 at 13. Further, it admits to having engaged with CBP on issues relevant to its evasion findings before CBP imposed interim measures. In fact, it criticizes CBP for not considering evidence that it provided. ECF No. 5 at 5, 11. It is difficult therefore to conclude that affording additional notice and an opportunity to resubmit information already in CBP's position would avoid an erroneous outcome. ICON disagrees with CBP's findings in this case but has not shown that these Congressionally authorized procedures present a high risk of erroneous deprivation such that they deprive importers of due process.

Further, requiring importers to be notified of an investigation and given an opportunity to participate in advance of a finding on interim measures would impair the public interest. EAPA exists because evasion of AD and CVD Orders is common, with importers constantly modifying their tactics to avoid detection. Investigating and remedying evasion is like a game of whack-a-mole, and notifying importers of allegations against them without giving CBP a brief period to investigate will only result in importers changing their evasion tactics to nullify investigations and escape detection. The "public has a strong interest in protecting the revenue of the United States

and in assuring compliance with the trade laws," that will be undercut by a premature notice requirement. *See Int'l Fresh Trade Corp. v. United States*, 26 F. Supp. 3d 1363, 1371 (Ct. Intl. Trade 2014). Interim measures are allowed "to ensure that appropriate duties can be collected on entries of covered merchandise made during the pendency of an EAPA investigation." Investigation of Claims of Evasion of Antidumping and Countervailing Duties, 81 Fed. Reg 56,477, 56,478 (Aug. 22, 2016).

Each day that an importer engaged in evasion is permitted to continue importing goods without paying AD and CVD duties is a day that U.S. companies and their employees are harmed by dumping of unfairly priced articles designed to undercut U.S. manufacturers. Coalition members and similarly situated domestic producers went through a 15-month-long investigative process in which both Commerce and the Commission determined that the domestic industry is entitled to relief. *See*, *supra*, at 3-4. Recognizing the severity of the harm caused and continuing concerning tactics, Commerce and the Commission imposed multiple additional remedies that are generally reserved for egregious circumstances, including a finding of critical circumstances and a certification provision. *See id.* In suggesting that CBP should simply add an opportunity for briefing or some other form of process short of a "full blown evidentiary hearing," ECF No. 5 at 13, prior to imposition of interim measures, ICON fails to grapple with the impact that resultant delays would have on U.S. manufacturers who are awaiting relief. Congress has, however, grappled with this issue and settled on an appropriate balance. The public has an interest in redressing these wrongs through the balance carefully crafted by Congress.

The question of whether imposition of interim measures without prior notice constitutes a violation of an importer's procedural due process rights has come before this Court multiple times, and the Court has found no violation multiple times. In *Aspects Furniture*, the Court relied on the

17

fact that CBP's regulations allow for importers to challenge allegations of evasion and imposition of interim measures to conclude that "Aspects has not demonstrated that it was deprived of due process by the imposition of interim measures" which were imposed "without first allowing Aspects an opportunity to be heard." 607 F. Supp. 3d at 1273. In *American Pacific Plywood*, the Court found "Plaintiffs have not established any protected interest for due process entitling them to any procedures other than what Customs granted them." 2023 WL 4288346, at *12.

Plaintiff does not acknowledge these opinions and relies exclusively on *Superior Com. Solutions, LLC v. United States*, 811 F. Supp. 3d 1363 (Ct. Intl. Trade 2025). *Superior Commercial Solutions'* validity is in question as it is presently being challenged at the Federal Circuit. Notably, it was decided after the plaintiff had exhausted its administrative remedies, not on a petition for interlocutory injunctive relief.

ICON has not demonstrated a likelihood of success on the merits, an essential element of its claim for injunctive relief.

  **ii.** **ICON Has Not Sufficiently Alleged That It Will Suffer Irreparable Harm.**

ICON fails to meet its "extremely heavy burden" of demonstrating an immediate, non-speculative injury that cannot be remedied through ordinary legal channels. *Int'l Custom Products, Inc. v. United States*, 30 C.I.T. 21, 27 (2006) (quoting *Shandong Huarong Gen. Group Corp. v. United States*, 24 C.I.T. 1279, 1282, 122 F. Supp. 2d 1367 (2000)) ("{P}laintiff has not made a showing sufficient to support a finding of irreparable harm."). Irreparable harm is the "crucial factor" in determining whether the extraordinary remedy of preliminary injunctive relief is warranted, and failure to establish irreparable harm alone is sufficient grounds to deny a TRO or preliminary injunction. *Int'l Custom Products*, 30 CIT. at 27 (quoting *Corus Group PLC v. Bush*, 26 C.I.T 937, 942 (2002)); *Elkem Metals Co. v. United States*, 25 C.I.T. 186, 195-96, 135 F.

18

Supp.2d 1324 (2001) ("Thus, the Court concludes that Petitioners have failed to make a showing sufficient to carry their burden with respect to the crucial element of irreparable injury.").

ICON's asserted harms are overwhelmingly economic. It complains of increased cash-deposit requirements, constraints on liquidity, and downstream financial consequences caused by Customs' interim measures. But it is well settled that economic injury—even substantial economic injury—is not irreparable, if it can be remedied through refunds or other monetary relief if the plaintiff ultimately prevails. *See Harmoni Intl. Spice, Inc. v. U.S.*, 211 F. Supp. 3d 1298, 1306–07 (Ct. Intl. Trade 2017) ("Generally, an allegation of financial loss alone, however substantial, which is compensable with monetary damages, is not irreparable harm if such corrective relief will be available at a later date."); *Elkem Metals Co. v. U.S.*, 25 CIT at 192 (2001) (quoting *Neenah Foundry Co. v. United States*, 86 F. Supp. 2d 1308, 1313 (2000)) ("Economic injury of the kind claimed here is 'not necessarily irreparable.' Irreparable injury is harm for which there exists no adequate remedy at law.").

Here, as discussed above, there is a "possibility that adequate compensatory or other corrective relief will be available at a later date." *Harmoni Int'l. Spice*, 211 F. Supp. 3d at 1307 (Ct. Intl. Trade 2017) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *see also*, *supra*, at 15-16. As such, ICON's ability to seek refunds with interest if it prevails in the EAPA process, "weighs heavily against a claim of irreparable harm." *Id.*

ICON's allegations that it will go out of business do not alter this analysis. Courts consistently reject conclusory predictions of insolvency unsupported by concrete, objective evidence. *See Ninestar Corporation v. United States*, 687 F. Supp. 3d 1308, 1339 (Ct. Intl. Trade 2024) (quoting *Shandong Huarong Gen. Grp. v. United States*, 24 CIT 1286, 122 F. Supp. 2d 143, 147 (2000)) ("That evidence falls short of establishing substantial financial harm. Generally,

19

"affidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction."); *Int'l Custom Products, Inc. v. United States*, 30 CIT 21, 27 (2006) ("It has submitted no financials, contracts, or other proof to make its case. Considering the heavy burden it is required to carry, an examination of the Raybuck Declaration reveals that it is simply inadequate to its task.").

In *International Custom Products*, the plaintiff similarly claimed that increased duties would force it out of business. The court rejected that argument, emphasizing that the plaintiff had "not bolstered these affidavits through independent evidence indicating exactly how and when denial of relief would force it out of business." 2006 WL 141525, at *28 (quoting *Shandong Huarong Gen. Grp.*, 24 CIT 1286, 122 F. Supp. 2d at 1371 (2000)). The court further explained that affidavits from interested parties offering speculative assessments of future business collapse are "weak evidence, unlikely to justify a preliminary injunction." *Int'l Custom Products, Inc*. 30 CIT at 28. (quoting *Shree Rama Enters. v. United States*, 21 CIT 1165, 983 F. Supp. 2d 192, 195 (1997)).

ICON's Motion suffers from the same defects. Its assertions rest on speculative assumptions about lender behavior, supplier reactions, and customer decisions based on declarations, rather than documented evidence showing that closure is imminent and unavoidable. None of the declarations relied on are "supported by financial statements or other 'independent evidence indicating exactly how and when these lost sales would force {ICON} out of business' or, at least, to incur substantial losses." *Ninestar Corporation*, 687 F.Supp.3d at 1339 (quoting *Shandong Huarong Gen. Grp.*, 24 CIT at 1290 (2000)); *Int'l Custom Products, Inc.* 30 CIT at 27 (2006) (quoting *Shandong Huarong Gen. Grp.*, 24 CIT at 1290 (2000)) ("it is not enough merely to establish a possibility of injury, even where prospective injury is great. A presently existing,

actual threat must be shown."). Moreover, Commerce implemented, and the Commission found critical circumstances do exist with respect to imports of LSPTVs, extending duties as far back as imports entered on September 7, 2024. This means that ICON was required to pay duties on imports from China, yet ICON's business has continued to thrive. *See* Notice of Initiation of Investigation in Interim Measures – EAPA Cons. Case 8247, Exhibit 3 to Pl.'s M.TRO and Prelim. Inj. (Apr. 13, 2026), ECF No. 5-3 ("Investigation Notice") ("Notably, ICON shifted its golf carts sourcing to Vietnam after Commerce issued its preliminary determination."); *see also Harmoni Int'l. Spice, Inc. v. U.S.*, 211 F. Supp. 3d 1298, 1307 ("Plaintiff has not demonstrated that it would face immediate and irreparable loss of goodwill or damage to its reputation if it were to obtain supply from an alternative source.").

Additionally, ICON's attempt to characterize its alleged loss of goodwill, customer relationships, and reputation as irreparable is equally unavailing. Courts routinely reject such claims where, as here, the alleged reputational harm is speculative (i.e., not based on evidence) or flows indirectly from lawful enforcement measures. *See, e.g., Harmoni Int'l. Spice, Inc. v. U.S.*, 211 F. Supp. 3d 1298, 1307–09 (rejecting irreparable-harm claim based on speculative loss of goodwill and financial hardship where plaintiff had alternative suppliers, access to capital, and failed to show imminent, unavoidable insolvency); *see also Seko Customs Brokerage, Inc. v. U.S.*, 719 F.Supp.3d 1279, 1288 (Ct. Intl. Trade 2024) (explaining that "economic loss stemming from regulatory action is a cost that many businesses face").

In *Harmoni International Spice, Inc.*, the court held that the plaintiff failed to demonstrate irreparable harm from alleged loss of goodwill caused by Customs' enhanced bonding requirements, explaining that "Plaintiff offers no documentation to support its speculation" and thus had "not demonstrated that it would face immediate and irreparable loss of goodwill or

damage to its reputation" as a result of complying with those measures. 211 F. Supp. 3d 1298, 1308 (Ct. Int'l Trade 2017). Similarly, in *International Custom Products*, the court rejected claims of reputational harm where the plaintiff failed to submit contracts or other objective evidence demonstrating that its business relationships would be permanently damaged. *Intl. Custom Products, Inc.*, 2006 WL 141525 at *5. ("For instance, it has not produced its contracts with either Supplier A or Customer A so it is impossible to know if a loss of goodwill will result under their provisions."). Affidavits from customers and suppliers, even "major" ones, will not suffice. *See Shandong Huarong Gen. Grp*, 24 CIT at 1290 (2000) (quoting *Shree Rama Enterprises*, 21 CIT at 1167 (1997)) ("Plaintiff's evidence consists solely of an affidavit from its 'major customer.' Although informative, this Court has held that 'affidavits submitted by interested parties are weak evidence, unlikely to justify a preliminary injunction.'"). ICON simply has failed to substantiate any of its allegations.

Finally, granting injunctive relief based on ICON's asserted harms would effectively establish an impermissible *per se* irreparable-harm rule in EAPA cases. *See, e.g., Seko Customs Brokerage, Inc. v. U.S.*, 719 F. Supp. 3d 1279, 1288 (Ct. Int'l Trade 2024) (quoting *Ninestar*, 687 F. Supp. 3d at 1341) ("Any regulation can impose costs upon businesses, and to invoke that cost as a form of irreparable harm would create a 'per se irreparable harm rule' which 'would lie in tension with the {regulation} itself.'"). Courts have expressly cautioned against collapsing the irreparable-harm inquiry merely because enforcement measures impose significant financial consequences on regulated entities. *See Ninestar*, 687 F. Supp. 3d at 1341 ("Holding those harms to be sufficient would create an impermissible 'per se irreparable harm rule,' which would yield 'a result likely contrary to the extraordinary nature' of preliminary injunctions."). ICON's "alleged

irreparable harm here would be the same for all other similarly situated plaintiffs," in such circumstance, "Congress's choice of policy" should be adhered to. *Id.*

ICON has not made the concrete, non-speculative showing required to justify such extraordinary relief. For these reasons, the Court should deny Plaintiff's Motion for TRO and Preliminary Injunction.

### iii.    The Balance of Hardships Does Not Favor ICON.

ICON has not demonstrated that the balance of equities weighs in its favor. "Before granting a preliminary injunction, the court must balance the competing claims of injury and must consider the effect that granting or denying relief will have on each party." *Int'l Fresh Trade*, 26 F. Supp. 3d at 1370 (citing *Winter*, 555 U.S. at 24). ICON argues that failure to issue an injunction will cause it substantial economic harm, potentially even leading to bankruptcy. However, as discussed above, ICON's claim is supported only by weak, conclusory evidence that fails to "establish a viable threat of irreparable harm." *Id.*

Conversely, the U.S. stands to lose substantial revenue if the Court issues an injunction barring CBP from collecting duties in accordance with the interim measures. Further, barring CBP from collecting duties would undermine the government's ability to combat unfair trade practices. *See Retractable Techs. Inc. v. United States*, 739 F. Supp. 3d 1330, 1342 (Ct. Intl. Trade 2024). As in *Retractable Technologies*, "the relief sought {by ICON} is not narrow." *Id.* "As Plaintiff has not established irreparable harm and Customs claims an at least comparable economic injury, the balance of the equities cannot be said to favor either (and therefore does not favor the Plaintiff)." *Int'l Fresh Trade*, 26 F. Supp. 3d at 1371 (2014).

In addition to monetary loss, ICON points to loss of customer goodwill attendant to raising prices, and loss to business reputation if it is unable to make its commitments due to financial hardship. ICON of course presumes that CBP is wrong on the merits of its evasion findings and

therefore these consequences are unwarranted. But, it is equally, if not more, plausible that CBP is correct and ICON has been evading AD and CVD Orders for over a year. If CBP is correct, and the Court issues an injunction barring it from imposing interim measures, the loss to U.S. manufacturers trying to compete on fundamentally unfair terms will be huge. ICON cannot show that the equities tip in its favor.

### iv.    **Public Interest Weighs in Favor of Denial.**

The public interest strongly favors denial of ICON's request for emergency injunctive relief. "Congress has made clear that protecting the revenue of the United States is a significant public interest," and courts consistently decline to enjoin Customs measures that are designed to safeguard potential duty liability during the pendency of an investigation. *Harmoni Int'l Spice*, 211 F.Supp.3d at 1318 (2017) (citing 19 U.S.C. § 1623). Further, as described above, to address that public interest, Congress implemented the EAPA process and established clear procedures regarding the contours of EAPA administrative proceedings and the rights of parties to appeal. *See Royal Brush Mfg., Inc. v. U.S.*, 75 F.4th 1250, 1255 (Fed. Cir. 2023) (quoting § 1517(c)(1)(A)) ("Congress, concerned with evasion of {AD} duties, on February 24, 2016, enacted the EAPA, a statutory scheme for determining whether 'covered merchandise was entered into the customs territory of the United States through evasion.'").

Here, ICON seeks to halt interim measures that serve precisely this statutory purpose— preserving the government's ability to collect duties if evasion is ultimately found. *See All One God Faith, Inc. v. U.S.*, 129 F.4th 1350, 1353 (Fed. Cir. 2025) ("In 2016, the President signed into law … the Enforce and Protect Act of 2015 (EAPA), which empowers Customs to investigate allegations that an importer has evaded AD or countervailing duties…"). Granting the requested injunction would expose the Treasury to precisely the risk Congress sought to prevent. *See Intl. Custom Products, Inc.*, 2006 WL 141525, at *7 ("the defendant's arguments with respect to the

potential loss of revenue to the government have merit, and that this part of the four-part test favors defendant.").

The public interest also favors "permitting" Customs to administer and enforce the trade laws in a "accurate, effective, uniform, and fair enforcement of the trade laws by encouraging parties to cooperate with Commerce and respond to Commerce's questionnaires." *Harmoni Int'l Spice*, 211 F.Supp.3d at 1318 (2017). That interest is particularly acute here. The AD and CVD orders covering Chinese low-speed personal transportation vehicles were issued only after extensive investigations by Commerce and the U.S. International Trade Commission, which found that imports of such merchandise were causing material injury to U.S. producers. Since issuance of those orders, Customs has made multiple interim findings of evasion in the LSPTV industry— including in the same EAPA investigation involving ICON and other large importer-producers— underscoring the demonstrated need for robust enforcement of the orders and the collection of AD/CVD duties. *See, e.g.*, Investigation Notice, ECF No. 5-3 (implementing EAPA interim measures on multiple producers and importers of LSPTVs, including ICON, HDK Plastic Factory, Ltd., Denago EV Corporation, Marxon Energy, Inc., Aero Import LLC, and Tao Motor Inc.); *see also* Notice of Initiation of Investigation and Interim Measures – EAPA Case 8282, (Apr. 10, 2026), attached as Exhibit 1 (implementing EAPA interim measures on LSPTV producer Star EV Corporation). Enjoining interim EAPA measures at the outset would undermine Customs' ability to carry out this enforcement function—namely, the effective enforcement of the antidumping and countervailing duty orders and the EAPA framework—and would invite premature judicial intervention into active enforcement proceedings. *Supra*, at 15-17.

In addition, unlike importers, the domestic industry has no monetary remedy for injury caused by unfairly traded imports. The relief Congress provided through the AD/CVD laws is

25

market-based—restoring fair pricing conditions so producers can compete on a level playing field once the injurious effects of dumping and subsidization are restrained. *Supra*, at 16-17. Enjoining interim EAPA measures would delay that relief, allowing continued importation of merchandise reasonably suspected of evading the orders and prolonging the very market distortion the agencies have already found warrants corrective action. As a result, domestic producers—along with their workers, communities, and customers—would be forced to continue waiting for the market-stabilizing relief to which the agencies have already determined they are entitled.

ICON asks the Court to elevate asserted private economic hardship over the broader public interest in revenue protection and trade-law enforcement. Courts have rejected such arguments time and again, recognizing that temporary compliance costs on individual importers do not outweigh the systemic harm caused by weakening enforcement mechanisms. *See Elkem Metals Co.*, 25 CIT at 196 (2001) ("the Court concludes that the public interest would be better served by maintenance of the status quo pending a conclusive resolution of the merits."); *see also supra*, at 16-17. There is a potential that the government would suffer a loss of revenue if the Court issues an injunction, and the government determines that ICON was evading duties. Potential revenue losses favor denial of relief. *Intl. Custom Products, Inc.*, 2006 WL 141525, at *7 ("the defendant's arguments with respect to the potential loss of revenue to the government have merit, and that this part of the four-part test favors defendant."). The public interest "lies in 'fair and efficient operation of the antidumping laws.'" *Elkem Metals Co.*, 25 CIT at 196 (2001). The public interest weighs decisively against enjoining Customs' interim measures pending completion of the EAPA investigation.

## CONCLUSION

For these reasons, the Court should deny ICON's motion for a temporary restraining order and preliminary injunction.

Dated: April 17, 2026

Respectfully submitted,

*/s/ Robert E. DeFrancesco, III*

Robert E. DeFrancesco, III, Esq.
Derick G. Holt, Esq.
Theodore P. Brackemyre, Esq.
Rebecca J. Fiebig, Esq. (Admission pending)
Joel S. Nolette, Esq.
Kahlil H. Epps, Esq. (Admission pending)

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000
rdefrancesco@wiley.law
dholt@wiley.law
tbrackemyre@wiley.law
rfeibig@wiley.law
kepps@wiley.law

*Counsel to the American Personal Transportation Vehicle Manufacturers Coalition*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17 day of April, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record.

Dated:  April 17, 2026

/s/ Robert E. DeFrancesco, III, Esq.
Robert E. DeFrancesco, III, Esq.

*Counsel to the American Personal Transportation Vehicle Manufacturers Coalition*