Slip Op. 26-42

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ICON EV LLC,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,<br><br>    Defendants. | Before: Jane A. Restani, Judge<br><br>Court No. 26-02759<br><br>PUBLIC VERSION |

**OPINION**

[Plaintiff's motion for a temporary restraining order and preliminary injunction is granted.]

Luke Mathers, Sandler, Travis & Rosenberg, P.A., of New York, NY, argued for the plaintiff ICON EV LLC. With him on the brief were Deborah Beth Stern and Sarah Suzanne Sprinkle.

Adam Angelo Vischio, Trial Attorney, International Trade Field Office, Civil Division, U.S. Department of Justice, of New York, NY, argued for the defendant. With him on the brief were Douglas Glenn Edelschick, Senior Trial Counsel, and Edward Francis Kenney. Of counsel were Nicolas Alexander Morales, Office of Chief Counsel, U.S. Customs and Border Protection and Tamari J. Lagvilava, Senior Attorney, of Washington, DC.

Dated: April 24, 2026

Restani, Judge: Before the court is ICON EV LLC's ("ICON") motion for a temporary restraining order and preliminary injunction, Pl.'s Mot. for TRO and Prelim. Inj., ECF No. 5 (Apr. 13, 2026) ("Mot."), and the government's opposition thereto and motion to dismiss for lack of subject matter jurisdiction. Defs.' Mot. to Dismiss and Opp'n to Pl.'s Mot. for TRO & Prelim. Inj., ECF No. 24 (Apr. 17, 2026) ("Opp."). ICON seeks to enjoin the imposition of certain interim

measures under the Enforce and Protect Act ("EAPA") pending the United States Department of Customs and Border Protection's ("Customs") EAPA investigation. See Mot. at 2. Because the court likely has subject matter jurisdiction and because the preliminary injunction factors weigh in ICON's favor, the court grants ICON's motion for a preliminary injunction. On April 23, the court held a preliminary injunction hearing where it granted ICON's motion for a TRO. See Order, ECF No. 37 (Apr. 23, 2026).

## BACKGROUND[1]

On April 13, 2026, ICON filed its complaint asserting that Customs' imposition of interim measures without prior notice or a meaningful opportunity to be heard violated its Fifth Amendment Due Process rights. See Compl., ECF No. 1 (Apr. 13, 2026). Alongside its complaint, ICON filed its motion for a temporary restraining order and preliminary injunction enjoining enforcement of the interim measures "during the pendency of Customs' EAPA investigation."[2] Mot. at 2. The government filed its opposition to ICON's motion on April 17, 2026, see Opp'n, and ICON filed its reply on April 20, 2026. See Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss and Reply in Supp. of its Mot. for a TRO and Prelim. Inj., ECF No. 31 (Apr. 20, 2026) ("Reply").

### I.    The EAPA Generally

At issue in this case are certain interim measures imposed on ICON pursuant to the EAPA. The EAPA was enacted to "empower the U.S. Government and its agencies with the tools to identify proactively and thwart evasion at earlier stages to improve enforcement of U.S. trade laws, including by ensuring full collection of [antidumping and countervailing] duties and, thereby,

---

[1] The findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding. Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

[2] ICON does not seek to enjoin the interim measures "to the extent that they merely extend or suspend liquidation." Mot. at 2.

preventing a loss in revenue." Asia Wheel Co. v. United States, 762 F. Supp. 3d 1289, 1298 (CIT

2025) (quoting Diamond Tools Tech. LLC v. United States, 545 F. Supp. 3d 1324, 1351 (CIT

2021)).   It mandates Customs to investigate reasonable allegations of evasion within fifteen

business days and requires Customs to issue a final determination within 300 days of commencing

its investigation.[3]   See 19 U.S.C. § 1517(b), (c).   An interested party may appeal the final

determination and seek judicial review thereafter.  See id. § 1517(f), (g).

Relevant here, Customs must impose interim measures within 90 days of starting its

investigation if "there is a reasonable suspicion" of evasion.  See 19 U.S.C § 1517(e).  These

interim measures include, at a minimum, suspension and extension of liquidation for unliquidated

entries.  Id. § 1517(e)(1)–(2).  Customs may impose additional measures if "necessary to protect

the revenue of the United States."  Id. § 1517(e)(3).  The statute does not require Customs to notify

affected parties before it imposes interim measures.  But see 19 U.S.C. § 1517(c)(4) (requiring

notice five business days after final determination).  While the EAPA allows for judicial review of

a final determination after appeal, see 19 U.S.C. § 1517(g),  the statute provides no explicit basis

for judicial review of interim measures.[4]

## II.    The EAPA Investigation

On August 12, 2025, the United States Department of Commerce ("Commerce") issued

antidumping and countervailing duty orders on low-speed personal transportation vehicles

("LSPTVs") from the People's Republic of China ("China").  See Certain Low-Speed Personal

Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty

---

[3] Customs may extend the time to make a determination in certain circumstances.  See 19 U.S.C.
§ 1517(c)(1)(B).
[4] Subsection 1517(g)(3) provides that nothing in subsection 1517(g) shall affect the availability of
judicial review under another provision of law.

Determination and Antidumping Duty Order; Amended Final Determination of Countervailing

Duty Investigation and Countervailing Duty Order, 90 Fed. Reg. 38,759 (Dep't Commerce Aug.

12, 2025) (the "LSPTV Orders").

The LSPTV Orders have a precise and limited scope. They cover certain Chinese-origin

LSPTVs and "subassemblies thereof, whether finished or unfinished and whether assembled or

unassembled." LSPTV Orders at 38,763. An unfinished and/or unassembled LSPTV "covers at

a minimum a subassembly, also known as a 'rolling chassis,' which is typically comprised of, but

not limited to, a frame or body" with installed suspension components and installed or installation-

ready powertrain components. Id. The LSPTV Orders distinguish between Chinese-origin parts

that are imported on the same bill of lading as a Chinese-origin rolling chassis—which are

covered—and Chinese-origin parts that are imported on separate bills of lading—which are not

covered. Id.

On October 10, 2025, and December 8, 2025, the American Personal Transportation

Vehicle Manufacturers Coalition (the "Coalition") submitted allegations that ICON[5] was evading

the LSPTV Orders.[6] See Notice of Initiation of Investigation and Interim Measures - EAPA Cons.

Case 8247 at 2–3, 4–6, ECF No. 24-2 (Apr. 17, 2026) ("Notice"). Specifically, the Coalition

alleged that ICON was "importing LSPTVs in disassembled form by breaking down LSPTVs into

---

[5] ICON imports certain proprietary models of electric golf carts into the United States. See Decl. of Roy Williams ¶ 2, ECF No. 13-1 (Apr. 14, 2026) ("Williams Decl."). ICON is also the ultimate consignee of the same merchandise imported by Marxon Energy Inc. ("Marxon") between October 8, 2025, and March 18, 2026, and is responsible for the payment of all duties owed on Marxon's entries. Id. ¶ 3.

[6] Customs had issued CF-28 Requests for Information to ICON and Marxon prior to receiving the Coalition's allegations. See Williams Decl. ¶ 10; see also Notice of Initiation of Investigation and Interim Measures - EAPA Cons. Case 8247 at 10 n.85, ECF No. 24-2 (Apr. 17, 2026) ("Notice"). ICON responded with origin verifications for certain of its golf cart builds and provided a virtual tour of its Vietnam factory. Williams Decl. ¶ 10. As a result of these responses, Customs reverted certain ICON entries to type 01 status from type 03, i.e., those with unfair trade duties. Id.

Court No. 26-02759                                                          Page 5

individual parts to avoid duties," and that "there were reports of imports routed through Vietnam to avoid tariffs." Id. at 4–5. In response to these allegations, Customs initiated an investigation on December 30, 2025. See id. at 9.

On March 30, 2026, Customs notified ICON of its "reasonable suspicion" that ICON had evaded the LSPTV Orders "by misclassification and by transshipment through Vietnam" and stated that it would implement interim measures. See March 30, 2026 Email at 2, ECF No. 5-2 (Apr. 13, 2026). On April 6, 2026, Customs provided formal notice that it reasonably suspected ICON of evading the LSPTV Orders and imposed interim measures pursuant to Section 1517(e). See Notice. The government asserts that Customs found reasonable suspicion for three main reasons: (1) ICON used Marxon Energy Inc. ("Marxon") as an importer of record while ICON remained the ultimate consignee;[7] (2) ICON shipped "separate chassis and other golf cart components" to avoid duties; and (3) ICON assembled separate shipments at its United States facilities while describing "easy-to-assemble components" in advertisements for jobs at those facilities. Opp. at 7. In addition to these reasons, the Notice also determined that ICON's CF-28 responses regarding its sourcing from Vietnam vis-à-vis China were deficient, thus establishing reasonable suspicion that ICON was transshipping golf carts through Vietnam. See Notice at 11–13.

ICON alleges that it had received no notice of the EAPA investigation or the interim measures prior to the March 30, 2026 email and that it was not given a meaningful opportunity to

---

[7] At the preliminary injunction hearing, ICON's CEO provided an explanation for why Marxon was listed as the importer of record. [[

]]

be heard before interim measures were imposed.  See Compl. ¶ 30; Decl. of Roy Williams ¶¶ 13–

14, ECF No. 13-1 (Apr. 14, 2026) ("Williams Decl.").

### III.    The Interim Measures

Customs has imposed the following interim measures on ICON:

- Extend liquidation of unliquidated entries that entered before the date of initiation of the investigation (December 30, 2025);
- Suspend liquidation of unliquidated entries entered on or after the date of initiation of the investigation, December 30, 2025, and reject any entry summaries and require a re-file for those entries that are within the entry summary reject period;
- Require "live" entry for all imports of [LSPTVs] from China and Vietnam by [ICON and Marxon], requiring [them] to submit proper documentation and all duties prior to release of the merchandise[8]

March 30, 2026 Email at 2; see Notice at 18–19.

As a result of these interim measures, ICON now owes millions in duties to Customs for

its own and Marxon's entries that have either entered, or are currently in transit to, the United

States[9]—[[                                                                    ]].  See Williams

Decl. ¶¶ 18, 20.  ICON explains—and provides financial data to support—that it cannot afford the

cash deposits required to enter these shipments into the United States.  See id. ¶¶ 18–32;

Consolidated Financial Statements, ECF No. 13-2 (Apr. 14, 2026) ("Fin. Stmts."); Monthly

Management Report, ECF No. 13-3 (Apr. 14, 2026) ("Mgmt. Rpt.").  Because the interim

measures effectively prevent ICON from entering and selling its merchandise, ICON asserts that

---

[8] The AD/CVD rates imposed are the "all others" rate under the LSPTV Orders (i.e., a combined AD/CVD cash-deposit rate of 519.23 percent ad valorem) on LSPTVs and parts, as long as Commerce has not determined a separate rate that would apply to that entry.  March 30, 2026 Email at 2.

[9] Though ICON represented that it had already been forced to turn away eight containers arriving into the United States on account of the interim measures, see Williams Decl. ¶ 18, ICON clarified at the preliminary injunction hearing that these entries in fact entered the United States and are currently in a bonded warehouse.

it will face bankruptcy within a month and a permanent loss of goodwill absent injunctive relief.[10]

Williams Decl.; see also Decl. of Skylar Schone, ECF No. 5-4 (Apr. 13, 2026) ("Schone Decl.");

Decl. of Tyson Scheumann, LLC, ECF No. 5-5 (Apr. 13, 2026) ("Scheumann Decl."); Decl. of

Paul and Tracy Spraetz, ECF No. 5-6 (Apr. 13, 2026) ("Spraetz Decl.").

## DISCUSSION

### I.    The Court Likely Has Subject Matter Jurisdiction Over This Action[11]

In its complaint, ICON asserts that the court has subject matter jurisdiction under 28 U.S.C.

§ 1581(i)(1)(D), which confers "exclusive jurisdiction of any civil action commenced against the

United States, its agencies, or its officers, that arises out of any law of the United States providing

for . . . administration and enforcement with respect to the matters referred to in [Section 1581(a)–

(h)]." See Compl. ¶ 12. ICON argues that Section 1581(i) jurisdiction is appropriate here because

"waiting for a final evasion determination and review under 28 U.S.C. § 1581(c) . . . would be

manifestly inadequate" as it is facing imminent extinction.[12]    Mot. at 14–15.    ICON does not

---

[10] ICON states that it currently operates with an asset-backed loan ("ABL"), which it has taken out to pay the duties owed on imports that Customs has already deemed subject merchandise. Id. ¶ 21. The ABL requires the company to have inventory to sell. Id. As structured, it allows ICON to purchase new assets and meet operational expenses while paying down the loan. Id. The ABL, however, is not sufficient to cover the new duty rates that ICON would owe, according to ICON. Id. ¶¶ 21–28. ICON asserts that it cannot raise prices or slash costs sufficiently to cover the over-500% duty rate. Id. ¶¶ 22–26.

[11] The court evaluates the parties' subject matter arguments in the context of ICON's preliminary injunction analysis and defers ruling on the government's motion to dismiss until it is fully briefed. See U.S. Ass'n of Importers of Textiles & Apparel v. U.S. Dep't of Com., 413 F.3d 1344, 1348 (Fed. Cir. 2005) (trial court may delay consideration of motion to dismiss when considering jurisdictional arguments in context of preliminary injunction motion); Celgard, LLC v. LG Chem, Ltd., 624 F. App'x 748, 751 (Fed. Cir. 2015) ("At a minimum, the district court must determine that there is a 'substantial probability' that it has jurisdiction over the claim that requires preliminary injunctive relief." (citing United States v. First Nat'l City Bank, 379 U.S. 378, 390 (1965))).

[12] ICON also argues that the interim measures imposed here constitute "reviewable final agency action withing the meaning of 5 U.S.C. § 704," subject to the court's (i) jurisdiction pursuant to 28 U.S.C. § 2640(e). Mot. at 15–17.

contest that 28 U.S.C. § 1581(c) would normally provide the appropriate mechanism for judicial review of interim measures, but asserts that (c) jurisdiction would be manifestly inadequate here. See id. at 14.  The government argues that the court does not have subject matter jurisdiction over the present action and moves to thereby dismiss ICON's complaint.  See Opp. 9–13.  It maintains that Section 1581(c) provides the sole mechanism for judicial review of interim measures and that ICON cannot prematurely challenge interim measures absent a final determination.  Id. at 11.  The government also argues that Section 1581(c) is not manifestly inadequate because financial harm and delays inherent in the statutory scheme are not inadequate.[13]  Id. at 11–13.

The Court of International Trade is a court of limited jurisdiction, the bounds of which are governed by 28 U.S.C. § 1581.  Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 358 (Fed. Cir. 1992).  Jurisdiction under Section 1581(i) "may not be invoked when jurisdiction under another subsection of [Section] 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate."  Sunpreme Inc. v. United States, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citing Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364, 1371 (Fed. Cir. 2002)).  Where, as here, the plaintiff asserts (i) jurisdiction, it "bears the burden of showing that another subsection is either unavailable or manifestly inadequate."  Erwin Hymer Group N. Am., Inc. v. United States, 930 F.3d 1370, 1375 (Fed. Cir. 2019) (citation omitted).

As explained in greater detail below, ICON has shown a real possibility of bankruptcy within the month if the court does not offer relief.  See Williams Decl. ¶ 21.  Because ICON has

---

[13] The government also maintains that ICON's challenge is not ripe because Customs has not made its final determination on whether evasion occurred.  Opp. at 13–15.  This argument misses the point.  ICON has alleged a procedural due process violation, which, by its nature, ripened at the moment due process was allegedly denied.  See cf. Zinermon v. Burch, 494 U.S. 113, 125–26 (1990) (Procedural due process violation occurs when "wrongful action is taken," i.e., when the government "fails to provide due process.").  The government cannot bog down the court's adjudication of a constitutional violation in a procedural morass of its own design.

provided evidence that it may not even exist to challenge the final determination (which at the earliest would be available for judicial review at the end of 2026), it will likely not be able to obtain an adequate remedy for the alleged due process violation if it must wait for this court's review under (c) jurisdiction.[14]  If ICON were challenging the merits of the EAPA investigation itself, this alleged harm likely would not be sufficient to show manifest inadequacy given that delays inherent in the statutory process are not inadequate.  See Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (citation omitted).  Here, however, there are no procedures that ICON can use to challenge Customs' imposition of interim measures with no notice.  ICON should not be driven to extinction while waiting for judicial review of a final determination when the interim measures—not the final determination—have caused its injury.  Thus (i) jurisdiction is appropriate.

## II.    The Preliminary Injunction Factors Favor ICON

ICON argues that the court should issue a preliminary injunction because the preliminary injunction factors favor it.  See Mot. at 10–14, 18–22.  First, it asserts that it will likely succeed on the merits because Customs has failed to provide notice and a meaningful opportunity to be heard in violation of its Fifth Amendment due process rights.  Id. at 10–14.  It maintains that the facts of

---

[14] The government cites Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546 (Fed. Cir. 1983) and Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324 (Fed. Cir. 2006) to contend that imminent bankruptcy is not sufficient to confer (i) jurisdiction.  See Opp. at 12–13.  Both cases are not applicable here.  International Custom Prods. concerned a classification case, where the party failed to request accelerated procedures.  467 F.3d at 1327–28.  In American Air Parcel Forwarding Co., the importer brought its case under (i) jurisdiction when it had failed to file the statutorily available protest.  718 F.2d at 1549–50.  Here, ICON is not attempting to bypass the statutory scheme governing judicial review of EAPA determinations.  Rather, it is challenging the imposition of interim measures that will render it bankrupt in the near-term, which it could not otherwise contest through (c) jurisdiction for up to 210 days.  See 19 U.S.C. § 1517(c), (f), (g).  Thus, ICON's plight may be "attributed to deficiencies in the statute."  Contra Am. Air Parcel Forwarding Co., 718 F.2d 1546 at 1551.

this case accord with those of <u>Superior Com. Sols., LLC v. United States</u>, 811 F. Supp. 3d 1363 (CIT 2025), wherein the court held that Customs failed to provide due process before it imposed interim measures. Mot. at 11–12. It also maintains that pre-deprivation notice and an opportunity to be heard are required here under <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976). Mot. at 12–14. Second, ICON maintains that it will suffer irreparable harm because—as its supporting declarations and financial evidence show—it will imminently be rendered bankrupt by interim measures absent injunctive relief. <u>Id.</u> at 20. It also argues—and provides declarations from upstream and downstream partners to support—that the interim measures will inflict unrecoverable damage to ICON's goodwill, reputation, business opportunities, and market share absent an injunction. <u>Id.</u> at 18–20; <u>see also</u> Schone Decl.; Scheumann Decl.; Spraetz Decl.[15] Third, ICON argues that the balance of equities and public interest favor ICON because the public has an interest in ensuring that Customs abide by its constitutional obligations and an injunction would not impair Customs' legitimate interest in protecting its revenue. <u>Id.</u> at 21–22.

The government argues that ICON will likely not succeed on the merits because there is no "constitutionally protected property interest in any rate of duty, an importation, or even engaging in international trade." Opp. at 17–18 (citing <u>Bd. of Trustees of the Univ. of Ill. v. United States</u>, 289 U.S. 48, 57 (1933)). It also argues that the EAPA statutory scheme, as well as Customs' regulations, provide notice and an opportunity to be heard before the final determination, which is sufficient under <u>Mathews</u>. <u>Id.</u> at 18–19. The government next asserts that ICON has failed to meet its heavy burden to show irreparable harm, arguing that financial harm alone—no matter how severe—is insufficient and that ICON's evidentiary support is deficient. <u>Id.</u> at 20–22. Finally, the

---

[15] The court notes that the allegations made in these declarations pale in comparison to corporate extinction.

government asserts that the balance of hardships and public interest factors weigh against injunctive relief here because pre-interim procedures would frustrate the EAPA's purpose and effectiveness. Id. at 22–23.

A preliminary injunction is extraordinary relief, which may be awarded when the movant establishes: "(1) that it will be immediately and irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the [movant]." Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983). Here, each factor favors ICON.

### a. ICON will likely succeed on the merits of its due process claim.

The Fifth Amendment prohibits the deprivation of life, liberty or property without due process of law. U.S. Const. amend. V. The Federal Circuit has "recognized in the EAPA context that an importer participating in an administrative proceeding has a procedural due process right to notice and a meaningful opportunity to be heard." Superior Com. Sols., 811 F. Supp. 3d at 1376 (citing Royal Brush Mfg., Inc. v. United States, 75 F.4th 1250, 1257 (Fed. Cir. 2023)). Consideration of due process first requires a determination that some "private interest" is at issue. Mathews, 424 U.S. at 334–35. To determine whether due process has been provided, courts consider (1) the private interest at stake; (2) the risk of an erroneous deprivation through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 335 (citation omitted).

ICON will likely succeed on the merits of its due process claim. It likely has a legitimate property interest in the proper assessment of imports[16] for which it did not receive due process before interim measures were imposed. See Superior Com. Sols., 811 F. Supp. 3d at 1376 (citing Royal Brush Mfg., 75 F.4th at 1257). First, ICON's private interest is compelling on account of the specific interim measures imposed and the sudden imposition of a combined 519.23% ad valorem cash-deposit rate [[                                        ]]. Mot. at 4; Williams Decl. ¶¶ 18, 20; see Phoenix Metal Co. v. United States, 2024 WL 2891503, at *9 (CIT June 10, 2024) (comparing the "combination of cash deposits for AD/CVD duties with the live entry requirement" to sanctions and observing that "[i]t is possible to imagine a scenario under which a plaintiff might allege specific enough harm coming from this economic burden for a serious due process issue to be raised"). For ICON, these are not just temporary deprivations until the EAPA investigation results in a determination that evasion did or did not occur. They are deprivations of such immediacy and magnitude that they will cause ICON to declare bankruptcy before it can contest the determination. See Williams Decl. ¶ 16.

Second, the risk of erroneous deprivation seems very real here indeed. In finding a reasonable suspicion of evasion, Customs relied primarily on ICON's responses to information

---

[16] The government argues that ICON has no legitimate property interest here because there is no constitutional right to trade. Opp. at 17–18. While a party has no legitimate property interest in future imports, courts are generally in agreement that "importers may have a protected interest in the proper assessment of duties on goods already imported." See Phoenix Metal Co. v. United States, 2024 WL 2891503, at *9 (CIT June 10, 2014) (citing Diamond Tools Tech., 545 F. Supp. 3d at 1340–41; Am. Pac. Plywood, Inc. v. United States, 2023 WL 4288346, at *7 (CIT June 22, 2023); Aspects Furniture Int'l, Inc. v. United States, 607 F. Supp. 3d 1246, 1271 (CIT 2022)). Here, both ICON's and Marxon's entries have already been imported into the United States See supra note 9; Williams Decl. ¶¶ 18, 20. Additional shipments are currently en route to the United States. Id. ¶ 18. While the court does not now determine at what point goods are considered imported for due process purposes, it is satisfied that ICON likely has a legitimate property interest in the proper assessment of duties on these goods. See id.

requests that it sent before initiating its investigation, see Notice at 10 n.85, 11–14. It provided no opportunity for ICON to supplement or explain its responses before deriving reasonable suspicion therefrom. Id. at 11–14. Its conclusions, premised upon ICON's incomplete evidentiary responses, may well have been premature or mistaken. Additional procedural safeguards, such as giving ICON an opportunity to supplement its responses, would therefore likely have probative value. See Mathews, 424 U.S. at 335. Separately, Customs determined that "ICON's practice of importing [[              ]] and [[                         ]] in separate shipments and assembling them at its facilities raises reasonable suspicion that it may be breaking golf carts into smaller parts, enabling the use of different HTSUS codes not covered by the [LSPTV Orders]." Notice at 14. But the LSPTV Orders quite clearly state that a rolling chassis, at a minimum, consists of a frame with suspension and powertrain components. See LSPTV Orders at 38,763. Moreover, the LSPTV Orders state that "suspension systems" and other components shipped on a separate bill of lading from a rolling chassis are not covered. Id. The government has failed to adequately explain why the LSPTV Orders would cover ICON's separately shipped parts.

Finally, the perceived government interest in this case is low. Customs had already issued several CF-28 requests to ICON prior to the commencement of the EAPA investigation, the responses to which it cited extensively in imposing interim measures. See Notice at 10–14. At the same time, the government makes much of ICON's post-deprivation opportunities to submit documentary evidence, see Opp. at 19 (citing 19 C.F.R. §§ 165.23, 165.26), but this only shows that Customs must review ICON's supplemental evidence before issuing its final determination. Thus, in this particular situation, allowing ICON to supplement its responses before imposing interim measures would impose few fiscal and administrative burdens on the government that it has not already accounted for. See Mathews, 424 U.S. at 335.

### b. ICON will likely suffer irreparable harm absent injunctive relief.

A party seeking a preliminary injunction must show it is likely to suffer irreparable harm if the injunction is not granted. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Irreparable harm consists of harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits. Canon, Inc. v. GCC Int'l Ltd., 263 F. App'x 57, 62 (Fed. Cir. 2008). Here, ICON alleges a real threat of extinction—corroborated by financial data and detailed in concrete terms by its corporate representative—that will not be sufficiently compensated by money damages.[17] See Williams Decl.; Fin. Stmts.; Mgmt. Rpt. Bankruptcy may be sufficient to show irreparable harm, particularly where, as here, the company threatened with extinction is long-standing and family-owned and has accrued goodwill through the effort of its

---

[17] While a preliminary injunction "should not issue on the basis of affidavits alone," Atari Games Corp. v. Nintendo of Am., Inc., 897 F.2d 1572, 1575 (Fed. Cir. 1990) (citation omitted), affidavits "that are detailed, non-conclusory, and non-speculative might support a preliminary injunction in an appropriate case." J. Conrad LTD v. United States, 457 F. Supp. 3d 1365, 1375 n.9 (CIT 2020) (citation omitted). Here, the Williams Declaration provides a detailed account of why ICON cannot afford the cash deposits required by the interim measures and how its resultant inability to sell inventory will likely precipitate ICON's bankruptcy. See Williams Decl. Williams' account is corroborated by hard financial data. The audited financial statements show that [[

]] Fin. Stmts. at 3. This is below the total amount due on the subject merchandise under the interim measures. See Willaims Decl. ¶¶ 18, 20. Additionally, the monthly management report for December 2025 shows that ICON only realized [[                    ]] in revenue in the last quarter of 2025. See Mgmt. Rep. at 3. Together, these documents corroborate that ICON cannot pay the live entries. As established during ICON's corporate representative testimony, because ICON's revenue is realized primarily by selling its imported golf carts, the live entry requirements place a chokehold on its cash flow which will cause it to default on its ABL obligations. See Mgmt. Rep. at 3; Fin. Stmts.

Moreover, ICON's corporate representative provided additional testimony (which was subject to cross-examination by the government) to corroborate its impending bankruptcy and loss of goodwill. [[

]]

owners over the course of its existence.[18]   See, e.g., hiQ Labs, Inc. v. LinkedIn Corp., 31 F.4th

1180, 1188 (9th Cir. 2022) ("[T]he loss of . . . an ongoing business representing many years of

effort and the livelihood of its . . . owners[] constitutes irreparable harm. What plaintiff stands to

lose cannot be fully compensated by subsequent monetary damages." (quoting Roso-Lino

Beverage Distrib., Inc. v. Coca-Cola Bottling Co., 749 F.2d 124, 125–26 (2d Cir. 1984) (per

curiam))); Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price

erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid

grounds for finding irreparable harm." (citation omitted)); Queen's Flowers de Colombia v. United

States, 947 F. Supp. 503, 507 (CIT 1996) (finding irreparable harm where imposition of cash

deposit rate would "force each of the eight [importers] out of business within an extremely short

time period, eliminating their opportunity for future corrective judicial relief").  Moreover, ICON

alleges—and again supports with nonparty declarations[19]—that the interim measures will have an

---

[18] The government cites Shandong Huarong Gen. Grp. v. United States, 122 F. Supp. 2d 143 (CIT 2000), Shree Rama Enters. v. United States, 983 F. Supp. 192 (CIT 1997), and Corus Grp. PLC v. Bush, 217 F. Supp. 2d 1347 (CIT 2002) to argue that allegations of significant monetary injury do not constitute irreparable harm.  See Opp. 19–22.  These cases are readily distinguishable and should not be read to establish a bright-line rule.  The plaintiff in Shandong Huarong General Group provided an affidavit from a single importer that it would not be able to continue importing the plaintiff's product and did not explain how the loss of sales from this importer would "impact its overall financial position."  122 F. Supp. 2d at 146.  The plaintiff proffered no financial statements to show that it did not "possess the capital reserves necessary to remain viable" during the litigation. Id. at 147.  The plaintiffs in Shree Rama Enterprises did not contend that they were in danger of bankruptcy, produced no witnesses available for cross-examination at the preliminary injunction hearing, and provided no written financial data.  983 F. Supp. at 195 (citation omitted).  Finally, the plaintiff in Corus Group PLC only provided evidence to show that it would suffer an "adverse economic impact"—that it could not sustain for "a long period of time"—to one of its plants when the court expected to rule on the merits "within a few months if not weeks."  217 F. Supp. 2d at 1355.

[19] Specifically, ICON attaches a declaration from ECO Capital, Inc. ("ECO Battery"), which is an upstream supplier of lithium battery systems for ICON.  See Schone Decl. ¶ 2.  ICON is one of ECO Battery's largest partners. Id. ¶ 3.  Due to the level of integration between the two companies and the scale of partnership, ECO Battery asserts that it will be forced to find another partner should it receive a material reduction in demand from ICON. Id. ¶¶ 7–9.  ICON also attaches two

immediate and lasting effect not just on its current sales, but on future goodwill, reputation, and market share absent injunctive relief. See Kwo Lee, Inc. v. United States, 24 F. Supp. 3d 1322, 1328 (CIT 2014) (finding irreparable harm where plaintiff's reputational damage among his domestic customers was caused by his failure to deliver, stemming from his inability to pay the fully collateralized bond amount).

### c. The balance of equities and public interest factors favor ICON.

The public interest and balance of equities factors "merge" where the government is the opposing party. Nken v. Holder, 556 U.S. 418, 435 (2009). In determining the balance of equities, the district court "must weigh the harm to the moving party if the injunction is not granted against the harm to the non-moving party if the injunction is granted." Metalcraft of Mayville, Inc. v. Toro Co., 848 F.3d 1358, 1369 (Fed. Cir. 2017) (citing Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1457 (Fed. Cir. 1988)). In considering whether the public interest favors the grant of an injunction, the district court should focus on whether the grant of injunctive relief would insjure a critical public interest. Id. (citing Hybritech, 849 F.2d at 1458).

The public interest and balance of equities factor favor ICON. While the EAPA serves a legitimate government interest, see Diamond Tools Tech., 545 F. Supp. 3d at 1351 (describing the purpose of the EAPA), ICON has shown a likelihood of success on the merits of its due process claim, and the "Constitution . . . does not permit [the government] to prioritize any policy goal over the Due Process Clause." Karem v. Trump, 960 F.3d 656, 668 (D.C. Cir. 2020) (citation

---

declarations from downstream suppliers who affirm that the sudden price increases that ICON imposed in response to the interim measures have impacted their businesses. See Scheumann Decl.; Spraetz Decl. The retailers assert that they will be unable to retail ICON's golf carts should ICON raise its prices further. Scheumann Decl. ¶ 12; Spraetz Decl. ¶ 8. The logic of these assertions seems obvious: an over-500% duty rate cannot be absorbed in the normal course and fundamentally alters business relationships.

omitted); see also cf. Queen's Flowers de Colombia, 947 F. Supp. at 508 (finding there is "a public interest in meaningful judicial review of unlawful administrative action, particularly . . . where the potential unlawful application . . . threatens . . . immediate economic extinction" and where an injunction would not "relieve [the importers] of their liability to pay dumping duties").

Moreover, the asserted government interest is narrower than the government represents.[20] ICON does not seek to enjoin the government from conducting its EAPA investigation or from extending and/or suspending liquidation during that investigation. See Mot. at 21–22. ICON seeks only to enjoin Customs from "rejecting entries, requiring re-filing and live entry, and subjecting Vietnam imports to the AD/CVD cash-deposit rate" without a fair hearing. Id. at 22. The government has had the opportunity to provide a fair hearing to determine if there are facts supporting a reasonable basis for suspicion that in-scope merchandise of China is imported by ICON or whether instead ICON likely imports merchandise that is a product of Vietnam. Customs' "suspicion" must reflect the actual scope of the orders alleged to be unlawfully evaded. Further, Customs has discretion not to impose all interim measures. See 19 U.S.C. § 1517(e)(3). The strength or weakness of the suspicion likely should affect that decision. Accordingly, the balance of equities and public interest factors favor ICON.

---

[20] The government advances a slippery slope argument that "pre-interim measures notice would allow importers an opportunity to obscure the evidence and change their practices before CBP has a chance to impose interim measures, thwarting CBP's investigative efforts and depriving the government of the revenue." See Opp. at 24. This argument is contradicted by the fact that Customs cited deficient responses (perhaps the only legitimate concern) as one of the bases for reasonable suspicion here. See Notice at 11–14.

Court No. 26-02759                                                          Page 18

## CONCLUSION

For the foregoing reasons, the court grants ICON's motion for a preliminary injunction.[21]

It is further:

**ORDERED** that until a pre-deprivation hearing is held, United States Customs and Border Protection is enjoined from enforcing the interim measures imposed under 19 U.S.C. § 1517(e) in EAPA investigation 8247, except to the extent those measures permit the extension of liquidation of entries that entered before December 30, 2025, and the suspension of liquidation of unliquidated entries entered on or after December 30, 2025.

**ORDERED** that this order will take effect on April 30, 2026.  The purpose of the delay is to preserve the status quo while the government provides an appropriate hearing.

                                                                    /s/ Jane A. Restani
                                                                   Jane A. Restani, Judge

Dated: April 24,  2026
        New York, New York

---

[21] At the preliminary injunction hearing, the government requested that the court require ICON to post a bond under Fed R. Civ. P. 65(c).  The court denied the government's request.  Rule 65(c) provides that the court may issue a TRO or preliminary injunction "only if the movant gives security in an amount the court considers proper to pay the costs and damages" in the event that the injunction were wrongfully granted.  See Fed. R. Civ. P. 65(c).  The court considers the proper amount here to be $0.  Requiring ICON to post a bond covering the over-500% duties would be no different from the live entry requirement which the court has just enjoined.  ICON has shown that it cannot pay this amount.  The government is protected because the delayed date of the injunction of the live entry requirement gives it time to comply with the court's order; without additional investigation from Customs, there cannot be a reasonable suspicion of evasion or that the duties alleged could be owed.  Moreover, the court has not disturbed the suspension and extension of liquidation of ICON's and Marxon's entries, such that ICON would still owe the same amount even if the injunction were to be dissolved.