**Slip Op. 26-55**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ICON EV LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,<br><br>    Defendants. | Before: Jane A. Restani, Judge<br><br>Court No. 26-02759<br><br>**PUBLIC VERSION** |

### OPINION

[Denying government's motion to dismiss for lack of subject matter jurisdiction.]

Luke Mathers, Sandler, Travis & Rosenberg, P.A., of New York, NY, for the plaintiff ICON EV LLC.  Also on the brief were Deborah Beth Stern and Sarah Suzanne Sprinkle.

Adam Angelo Vischio, Trial Attorney, International Trade Field Office, Civil Division, U.S. Department of Justice, of New York, NY, for the defendant.  Also on the brief were Douglas Glenn Edelschick, Senior Trial Counsel, of Washington, DC and Edward Francis Kenney, of New York, NY.  Of counsel were Nicolas Alexander Morales and Tamari J. Lagvilava, Office of Chief Counsel, U.S. Customs and Border Protection, of Washington, DC.

Dated: May 26, 2026

Restani, Judge:  Before the court is the government's motion to dismiss ICON EV LLC's ("ICON") complaint alleging that the United States Department of Customs and Border Protection ("Customs") violated its Fifth Amendment due process rights by imposing interim measures under the Enforce and Protect Act, 19 U.S.C. § 1517 ("EAPA"),  without pre-deprivation notice or a meaningful opportunity to respond.  See Defs.' Mot. to Dismiss & Resp. to Pl.'s Mot. for a TRO

& Prelim. Inj., ECF No. 24 (Apr. 17, 2026) ("Gov. Mot."); Compl. ¶¶ 42, 43, ECF No. 4 (Apr. 13, 2026). ICON asserts that the court has jurisdiction to hear its claims under 28 U.S.C. § 1581(i). Compl. ¶ 11. The government seeks dismissal of ICON's complaint for lack of subject matter jurisdiction.[1] See Gov. Mot. at 1. For the following reasons, the court holds that it has subject matter jurisdiction over ICON's claims and denies the government's motion.

## BACKGROUND

The court presumes familiarity with the facts of this case as explained in its order granting ICON's motion for a preliminary injunction. See Order at 2–7, ECF No. 40 (Apr. 24, 2026) ("Order"). It recounts here only those facts necessary for the adjudication of the government's motion to dismiss.

This case concerns certain interim measures that Customs imposed on ICON on April 6, 2026, pursuant to the EAPA. See Compl. ¶¶ 27, 28; U.S. Customs & Border Prot., EAPA Cons. Case 8247: Various Importers (Notice of Initiation of Investigation and Interim Measures, April 06, 2026) at 11–14, ECF No. 24-2 (Apr. 17, 2026) ("Notice"). The EAPA was enacted to "empower the U.S. Government and its agencies with the tools to identify proactively and thwart evasion at earlier stages to improve enforcement of U.S. trade laws, including by ensuring full collection of [antidumping and countervailing] duties and, thereby, preventing a loss in revenue." Asia Wheel Co. v. United States, 762 F. Supp. 3d 1289, 1298 (CIT 2025), appeal docketed, No. 25-1692 (Fed. Cir. Apr. 24, 2025) (quoting Diamond Tools Tech. LLC v. United States, 545 F. Supp. 3d 1324, 1351 (CIT 2021)). The EAPA statutory scheme works as follows: A party may

---

[1] In its motion, the government also requested that the court deny ICON's motion for temporary restraining order and preliminary injunction. Gov. Mot. at 15–24. The court rejected the government's arguments and issued an injunction in its April 24, 2026 order. See Order, ECF No. 40 (Apr. 24, 2026).

submit an allegation of evasion[2] that Customs will investigate within fifteen business days if the allegation is reasonable.  See 19 U.S.C. § 1517(b)(1)–(3) .  If Customs finds a reasonable suspicion of evasion, it must impose certain interim measures[3] within ninety days of starting its investigation.  Id. § 1517(e).  Within 300 days of initiating the investigation, Customs must make a final determination, based on substantial evidence, with respect to whether evasion occurred.[4]  Id. § 1517(c)(1)(A).  An affected party may appeal the final determination with Customs within thirty business days, and Customs must complete the appeal process within sixty business days.  Id. § 1517(f).  Thereafter, an affected party may seek the court's review.  Id. § 1517(g)(1).

On April 6, 2026, Customs found a reasonable suspicion that ICON and Marxon Energy Inc. ("Marxon")[5] had evaded the antidumping and countervailing duty orders against certain low-

---

[2] The term "evasion" refers to "entering [merchandise subject to antidumping or countervailing duty orders] into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise."  19 U.S.C. § 1517(a)(5)(A).

[3] Under Section 1517(e), Customs shall impose the following interim measures:
> (1) suspend the liquidation of each unliquidated entry of such covered merchandise that entered on or after the date of the initiation of the investigation;
> (2) pursuant to the Commissioner's authority under section 1504(b) of this title, extend the period for liquidating each unliquidated entry of such covered merchandise that entered before the date of the initiation of the investigation; and
> (3) pursuant to the Commissioner's authority under section 1623 of this title, take such additional measures as the Commissioner determines necessary to protect the revenue of the United States, including requiring a single transaction bond or additional security or the posting of a cash deposit with respect to such covered merchandise.

19 U.S.C. § 1517(e)(1)–(3).

[4] Customs may extend the time to make a determination in certain circumstances.  See id. § 1517(c)(1)(B).

[5] ICON imports certain proprietary models of electric golf carts into the United States.  See Decl. of Roy Williams ¶ 2, ECF No. 13-1 (Apr. 14, 2026) ("Williams Decl.").  ICON is also the ultimate consignee of the same merchandise imported by Marxon between October 8, 2025, and March 18, 2026, and is responsible for the payment of all duties owed on Marxon's entries.  Id. ¶ 3.

speed personal transportation vehicles ("LSPTVs") from China.  Certain Low-Speed Personal Transportation Vehicles From the People's Republic of China: Amended Final Antidumping Duty Determination and Antidumping Duty Order; Amended Final Determination of Countervailing Duty Investigation and Countervailing Duty Order, 90 Fed. Reg. 38,759 (Dep't Commerce Aug. 12, 2025) (the "LSPTV Orders");[6] Notice at 1–2.  It thus imposed interim measures on ICON, requiring an over-500% duty rate on ICON's imports and, inter alia, "live" entry cash deposits.[7] Notice at 18–19; March 30, 2026 Email at 2, ECF No. 5-2 (Apr. 13, 2026) ("March 30, 2026 Email").  ICON alleges that it received no notice of the EAPA investigation or the interim measures prior to Customs' announcement of interim measures on March 30, 2026.  See Compl. ¶¶ 30, 33.  ICON further alleges that it received no meaningful opportunity to be heard prior to the enforcement of the interim measures.  Id.  ¶¶ 3, 33, 42–43.  According to ICON, the required cash

---

[6] The court notes that the government, in quoting the purported "relevant scope of the order," omits (without an ellipsis) a critical paragraph limiting the LPSTV Orders' scope:

> Subject LSPTVs and subassemblies are covered by the scope of these orders whether or not they are accompanied by other parts. These orders covers [sic] all LSPTVs and subassemblies meeting the physical description of the scope, regardless of overall length, width, or height. The following individual components of Chinese origin that are entered by themselves on separate bills of lading (i.e., not on the same bills of lading as Chinese-origin subject subassemblies/rolling chassis) are not subject to these orders when accompanied by the appropriate certification: seat assemblies, steering columns, suspension systems, plastic cowlings, and electric and gas-powered motors suitable for use in LSPTV.  When entered with (i.e., on the same bill of lading as) a Chinese-origin LSPTV or subject rolling chassis, whether finished or unfinished and whether assembled or unassembled, or when entered without the appropriate certification, these components are subject merchandise.

Compare LPSTV Orders at 38,763 (emphasis added) (including quoted paragraph), with Gov. Mot. at 5–6 (omitting quoted paragraph).  See also Order at 13 ("[T]he LSPTV Orders state that 'suspension systems' and other components shipped on a separate bill of lading from a rolling chassis are not covered.  The government has failed to adequately explain why the LSPTV Orders would cover ICON's separately shipped parts." (citation modified)).

[7] Customs also extended and suspended the liquidation of ICON's and Marxon's unliquidated entries.  Notice at 18.

Court No. 26-02759                                                              Page 5

deposits would bankrupt it well before Customs could issue its final determination under the EAPA. See id. ¶¶ 15–16, 34.

On April 13, 2026, ICON filed its complaint alongside a motion for a temporary restraining order and preliminary injunction. Compl.; Pl.'s Mot. for a TRO & Prelim. Inj., ECF No. 5 (Apr. 13, 2026) ("ICON Mot."). ICON asserts that the sudden imposition of interim measures without a prior notice or a meaningful opportunity to be heard violated its Fifth Amendment due process rights. See Compl. ¶ 43; ICON Mot. at 10–13. On April 17, 2026, the government filed a response to ICON's motion and also moved to dismiss for lack of subject matter jurisdiction. See Gov. Mot. ICON filed its response to the government's dismissal motion on April 20, 2026, Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss & Reply in Supp. of its Mot. for a TRO & Prelim. Inj., ECF No. 28 (Apr. 20, 2026) ("ICON Opp."), and the government filed its reply on May 4, 2026. See Reply in Supp. of Gov't's Mot. to Dismiss, ECF No. 43 (May 4, 2026) ("Gov. Reply").

On April 24, 2026, the court granted ICON's motion for a preliminary injunction. See Order at 18. The court ruled that it "likely" had subject matter jurisdiction over ICON's action but deferred ruling on the government's pending motion to dismiss until the issue was fully briefed. Order at 7–9, 7 n.11. The court's injunction went into effect on April 30, 2026. Order at 18; Gov. Reply at 2. The government did not avail itself of the opportunity to conduct a hearing of any type. Gov. Reply at 2.

## DISCUSSION

In Counts I and II of its complaint, ICON raises an as-applied constitutional challenge to the reasonable-suspicion standard and the imposition of interim measures without pre-deprivation notice and an opportunity to be heard. See Compl. ¶¶ 35–47. In Count III, it asserts that Customs

violated Section 1517(e) because Customs did not have a reasonable suspicion of evasion. See id. ¶¶ 48–52.

In its motion for a preliminary injunction, ICON asserted that the court likely has subject matter jurisdiction under 28 U.S.C. § 1581(i) ("(i) jurisdiction") over these claims because any remedy offered under Section 1581(c) ("(c) jurisdiction") would be manifestly inadequate given ICON's imminent bankruptcy. ICON Mot. at 14–15. It also argued that the imposition of interim measures constituted a final agency action within the meaning of 5 U.S.C. § 704, reviewable under the court's (i) jurisdiction.[8] Id. at 15–17. The government moves to dismiss ICON's action pursuant to USCIT Rule 12(b)(1), arguing that ICON's claims are not ripe for judicial review because Customs has not yet issued a final determination. Gov. Mot. at 13–15. The government further argues that (c) jurisdiction provides the sole avenue for judicial review of EAPA investigations, and that, for the court to exercise (c) jurisdiction, ICON must wait for Customs to complete its EAPA investigation and issue a final determination which ICON can then appeal under 19 U.S.C. § 1517(f) and (g). Id. at 9–11. The government contends that the court cannot exercise (i) jurisdiction because allegations of financial harm are not sufficient to show manifest inadequacy. Id. at 11–13.

---

[8] ICON also argues in its opposition brief that the court has the authority to issue ICON's injunction under the All Writs Act. ICON Opp. at 12. The government counters that the All Writs Act cannot independently confer jurisdiction on the court absent existing statutory jurisdiction. Gov. Reply at 5. The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Because the court finds below that ICON has sufficiently demonstrated that the court has (i) jurisdiction given that (c) jurisdiction would be manifestly inadequate in this case, the court does not reach this issue.

### I.        ICON's Claims re Interim Measures Are Final and Ripe for Judicial Action

A case is ripe if the "issues are fit for judicial decision," and if there is "sufficient risk of suffering immediate hardship to warrant prompt adjudication." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1580–81 (Fed. Cir. 1993) (citation omitted); see also Abbott Lab'ys v. Gardner, 387 U.S. 136, 148–49 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977) (observing that the ripeness doctrine "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties"). A challenged agency action is fit for judicial decision if it is "final," i.e., if it "mark[s] the 'consummation' of the agency's decisionmaking process," and if it determines a party's rights or obligations or otherwise has legal consequences. Tokyo Kikai Seisakusho, Ltd. v. United States, 529 F.3d 1352, 1362 (Fed. Cir. 2008).

ICON's claims are ripe. Counts I & II seek redress for an alleged constitutional violation. See Compl. ¶¶ 35–47. These claims are ripe because the alleged unconstitutional act—namely the failure to provide due process—has already occurred. See cf. Zinermon v. Burch, 494 U.S. 113, 125–26 (1990) (a procedural due process violation occurs in the context of a claim under 42 U.S.C. § 1983 when a "wrongful action is taken," i.e., when the government "fails to provide due process"). While the EAPA provides for judicial review of final determinations under Section 1517(c), that provision cannot render unripe a constitutional procedural due process claim stemming from Customs' decision to impose interim measures without pre-deprivation notice or a meaningful opportunity to be heard.[9] See Mathews v. Eldridge, 424 U.S. 319, 331 (1976)

---

[9] That Customs may ultimately refund the duty deposits is irrelevant to whether the due process violation is ripe for judicial adjudication. See cf. Connecticut v. Doehr, 501 U.S. 1, 12 (1991) (even "temporary or partial impairments to property rights . . . are sufficient to merit due process protection"). Moreover, in this case, ICON asserts that the interim measures will bankrupt it before

(holding that the court had jurisdiction to review plaintiff's due process challenge notwithstanding his failure to satisfy the applicable statutory exhaustion requirements because "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing").

In Count III, ICON seeks redress for Customs' decision to impose interim measures. See Compl. ¶¶ 48–52. This claim is also ripe. First, the reasonable suspicion determination is fit for judicial decision because it is a final agency action. See Abbott Lab'ys, 387 U.S. at 149; Tokyo Kikai Seisakusho, 529 F.3d at 1362. Customs' decision to impose interim measures marked the consummation of Customs' reasonable suspicion determination.[10] See Notice at 2 (informing ICON that Customs "has determined that there is reasonable suspicion that [ICON has] evaded AD/CVD duties" and therefore "has imposed [certain] interim measures"); accord Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1384 (Fed. Cir. 2012) (determining that there was "nothing interlocutory, uncertain, or tentative about" a declaration that the Army "has determined that it is in its best interest to take corrective action"). Moreover, in this case, the interim measures prescribed the "terms and conditions" under which ICON could import its merchandise into the United States and thus had immediate legal consequence. See cf. Bennett v. Spear, 520 U.S. 154, 170, 178 (1997) (statement which prescribed "terms and conditions" under

---

Customs issues its final determination. Compl. ¶ 34. Thus, ICON will never have an opportunity to complete the entire statutory process. The deprivation, in other words, is not temporary.

[10] Under the EAPA, there is no other determination that Customs will make regarding whether to impose interim measures. Indeed, the standard governing interim measures (reasonable suspicion) is separate from that governing final determination (substantial evidence). See 19 U.S.C. § 1517(c)(1)(A), (e). While the EAPA anticipates that Customs will issue a final determination after imposing interim measures, the interim measures have an immediate effect that is separate from, and not dependent upon, Customs' final determination. See id.

which an agency could impact endangered species was a final agency action because it "altered the legal regime" to which the agency action was subject).

Second, "the impact of the" interim measures upon ICON "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." See Abbott Lab'ys, 387 U.S. at 152. The imposition of interim measures in this case is more like a regulation with immediate and direct effect on ICON's day-to-day business, see id. (impact of the regulation upon the petitioners was "sufficiently direct and immediate as to render the issue appropriate for judicial review" on account of its "direct effect on [their] day-to-day business"), rather than a complaint issued against certain companies, see F.T.C. v. Standard Oil Co. of Cal., 449 U.S. 232, 239 (1980), a non-final stated intent to reopen administrative review, see Tokyo Kikai Seisakusho, 529 F.3d at 1364, or even the publication of procedures which caused business uncertainty, see U.S. Ass'n of Imps. of Textiles & Apparel v. U.S. Dep't of Com., 413 F.3d 1344, 1349–50 (Fed. Cir. 2005). The court thus finds Count III ripe under Abbott—Customs formalized its reasonable suspicion decision in its notice imposing full interim measures, see Notice, and ICON has felt its effects in a concrete way. See Abbott Lab'ys, 387 U.S. at 148–49.

## II.     The Court Has (i) Jurisdiction Over ICON's Claims

For the court to have subject matter jurisdiction, the present dispute must fall within the bounds of the court's jurisdictional statute, 28 U.S.C. § 1581. Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 358 (Fed. Cir. 1992). Under Section 1581(c), the court has exclusive jurisdiction over "any civil action commenced under . . . Section 517 of the Tariff Act of 1930 [the EAPA]." 28 U.S.C. § 1581(c). Under Section 1581(i), the court has exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to

the matters referred to in . . . [the EAPA]." Id. § 1581(i)(1)(D).  Jurisdiction under Section 1581(i),

however, "may not be invoked when jurisdiction under . . . [Section 1581(c)] is or could have been

available, unless the remedy provided under that other subsection would be manifestly

inadequate."  Sunpreme Inc. v. United States, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citing Fujitsu

Gen. Am., Inc. v. United States, 283 F.3d 1364, 1371 (Fed. Cir. 2002)).  Where, as here, the

plaintiff asserts (i) jurisdiction, it "bears the burden of showing that another subsection is either

unavailable or manifestly inadequate."  Erwin Hymer Grp. N. Am., Inc. v. United States, 930 F.3d

1370, 1375 (Fed. Cir. 2019) (citation omitted).

ICON alleges that the interim measures will subject it to bankruptcy and permanent loss of

goodwill absent judicial review.  Compl. ¶ 34.  Specifically, the interim measures require ICON

to pay over-500% live entry duties on its imports[11]—more than ICON can currently afford—which

effectively prevents ICON from importing its merchandise into the United States.  March 30, 2026

Email at 2; Decl. of Roy Williams ¶¶ 15–20, ECF No. 13-1 (Apr. 14, 2026) ("Williams Decl.").

ICON has provided evidence to show that it does not have sufficient cash flow, readily available

assets, or realistic financing options to pay the duties when Customs issues its final

determination.[12]  See ICON EV, LLC and Subsidiaries, Consol. Fin. Statements: Dec. 31, 2024,

---

[11] ICON likely had a legitimate property interest in the [[                    ]]  worth of imports that
had already entered the country or were in transit to the United States when Customs imposed
interim measures allegedly without prior notice or a meaningful opportunity to respond.  See
Williams Decl. ¶¶ 18, 20; Order at 12.  ICON could not afford to pay the immediate, over-500%
duties required to import this merchandise into the United States and sell it—[[
       ]]— so it was forced to place its imports into a bonded warehouse.  [[

                                                                         ]]    This is a sufficient property
interest for purposes of this action.
[12] ICON requires inventory to satisfy its contractual obligations, generate revenue, and pay down
its asset-based loan.  See Williams Decl. ¶ 21; see also ICON EV, LLC and Subsidiaries, Consol.
Fin. Statements: Dec. 31, 2024 at 3, ECF No. 13-2 (Apr. 14, 2026) (indicating that [[
                                             ]]).    Thus, if ICON cannot challenge the

ECF No. 13-2 (Apr. 14, 2026); ICON EV LLC, Monthly Mgmt. Rep.: Dec. 2025, ECF No. 13-3

(Apr. 14, 2026).

The court has (i) jurisdiction over ICON's claims relating to interim measures because a

remedy under (c) jurisdiction would be manifestly inadequate.[13]  The EAPA requires Customs to

impose interim measures no later than 210 days before it issues its final determination.  See 19

U.S.C. § 1517(c)(1)(A), (e).  The EAPA provides for administrative and judicial review only of

final determinations, however.  Id. § 1517(f), (g); Vietnam Finewood Co. v. United States, 466 F.

Supp. 3d 1273, 1284 (CIT 2020) (holding that the court's review of Customs' final determination

may encompass interim decisions subsumed into the final determination).    Thus, absent

extraordinary relief, the EAPA insulates a Customs' decision to impose interim measures from the

court's review for 210 days plus the sixty business days in which Customs must complete its

administrative review.  See 19 U.S.C. § 1517(f).

While the government is correct that "delays inherent in the statutory process" are normally

not manifestly inadequate, Gov. Mot. at 12 (citing Sunpreme, 892 F.3d at 1194 (citation omitted)),

here this statutory scheme essentially precludes ICON from vindicating a constitutional right.

According to ICON, Customs imposed interim measures without due process that will bankrupt it

---

interim measures now and resume importation and sale of its imports, ICON will be rendered bankrupt before it can challenge the interim results as part of the final determination under the court's (c) jurisdiction.  The government's arguments alleging that ICON had other sources of revenue to weather the existential crisis appear to be based on a misunderstanding of line items in ICON's financial statements; the government's arguments about extra-corporate sources of revenue have no basis in fact.  See Gov. Mot. at 21.

[13] ICON does not explicitly contest that 28 U.S.C. § 1581(c) would normally provide the appropriate mechanism for judicial review of interim measures under the EAPA.  See ICON Mot. at 14; see also Aspects Furniture Int'l, Inc. v. United States, 607 F. Supp. 3d 1246, 1254 (CIT 2022) ("The Court has jurisdiction [over claims under the EAPA] pursuant to section 517 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1517(g), and 28 U.S.C. § 1581(c), which grant the Court jurisdiction over actions contesting determinations of evasion pursuant to the EAPA statute.").

before it can even receive a final determination from Customs or appeal that determination if it is

adverse. See Compl. ¶¶ 15–16, 34. Apart from the avenue to relief provided by 28 U.S.C.

§ 1581(i) jurisdiction, ICON has no statutory mechanism to challenge Customs' imposition of full

interim measures with no notice.[14] Requiring ICON to wait to file an action pursuant to Section

1581(c), therefore, would be "an exercise in futility, or incapable of producing any result; failing

utterly of the desired end through intrinsic defect; useless, ineffectual, vain." Sunpreme, 892 F.3d

at 1193–94 (citation modified) (citation omitted). ICON should not be driven to extinction while

waiting for a final determination or an appeal of the same when an alleged constitutional

deprivation—not the final determination—has caused its existential injury.[15] Thus the court has

subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i).

---

[14] The court emphasizes the unique procedural posture of this case. Unlike the vast majority of cases under the court's (c) jurisdiction, here Customs imposed duty rates before ICON had any statutory or regulatory basis to provide comment. This specific procedural posture stands in contrast to typical countervailing and antidumping duty determinations, in which the United States Department of Commerce notifies affected parties that it is initiating review, provides parties the opportunity to respond to questionnaires, issues preliminary results, and ultimately addresses the position of affected parties in its administrative determinations before imposing duty rates. See, e.g., 19 U.S.C. § 1675 (outlining the process for administrative review of determinations).

[15] The government cites Sunpreme, Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546 (Fed. Cir. 1983), and Int'l Custom Prods., Inc. v. United States, 467 F.3d 1324 (Fed. Cir. 2006) to contend that imminent bankruptcy is not sufficient to confer (i) jurisdiction. See Gov. Mot. at 12–13. These cases are not applicable here. In Sunpreme, the plaintiff filed suit before obtaining a scope ruling from Commerce and did not allege imminent extinction. Sunpreme, 892 F.3d at 1190. The court determined that "requiring Sunpreme to exhaust the administrative remedies would hardly deprive Sunpreme of the opportunity for full relief" because there would be no "long-term effect" on the plaintiff if the plaintiff waited to obtain a scope ruling. Id. at 1194. International Custom Products, Inc. concerned a classification case, where the party failed to request accelerated procedures. See 467 F.3d at 1327–28. In American Air Parcel Forwarding Co., the importer brought its case under (i) jurisdiction when it had failed to file the statutorily available protest. 718 F.2d at 1549–50. Here, ICON is not attempting to bypass the statutory scheme governing judicial review of EAPA determinations. Rather, it is only challenging the imposition of particular interim measures without adequate hearing that will render it bankrupt in the near-term, which it could not otherwise contest through (c) jurisdiction for up to 210 days plus sixty business days. See 19 U.S.C. § 1517(c), (f), (g). ICON cannot challenge an action if it no longer exists. Thus, ICON's plight may be "attributed to deficiencies in the statute," in contrast to

## CONCLUSION

For the foregoing reasons, the court holds that it has subject matter jurisdiction over the present action under 28 U.S.C. § 1581(i) and accordingly denies the government's motion to dismiss, ECF No. 24.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: May 26, 2026
New York, New York

---

the plaintiffs in American Air Parcel Forwarding Co. who failed to take advantage of the accelerated procedure for judicial review available under 19 C.F.R. § 174.22(a)–(d), and who could have sought judicial relief under 19 U.S.C. § 1581(h) earlier on when they were aware prior to importing their merchandise that Customs officials had proposed to assess identical merchandise at a higher valuation. See 718 F.2d at 1548–51.